**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Jared HENKEL, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 19, 2013.

Filed April 11, 2014.

Cheryl J. Sturm, Chadds Ford, for appellant.

Kevin F. McCarthy, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: BENDER, P.J., FORD ELLIOTT, P.J.E., BOWES, GANTMAN, DONOHUE, ALLEN, LAZARUS, OTT, and WECHT, JJ.

OPINION BY BOWES, J.:

Jared Henkel appeals from the order entered February 13, 2012, denying his first post-conviction relief petition filed pursuant to the Post–Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. After careful review, we affirm.

Appellant was found guilty following a joint jury trial with Craig Elias and Jared Lischner of second-degree murder, two counts of kidnapping, and one count each of criminal conspiracy, robbery, aggravated assault, and simple assault. The convictions arose from Appellant's participation in the abductions and beatings of Anthony Brownlee and Andrew Jones. During the criminal episode, Jones was strangled and killed by Elias.

Elias, Appellant and the two victims were all involved in a joint drug dealing enterprise. In 2002, Appellant rented 220 Sycamore Street in the Mount Washington area of Pittsburgh. Appellant stored drugs and money at the address in two safes. Appellant, Elias and Jones had keys to the house. On March 22, 2002, Appellant discovered that the safes had been taken from the stash house. He then called Jones, who was with Brownlee, and told both men to come to Sycamore Street. Meanwhile, Appellant and Elias met Matthew Henkel, Appellant's brother.

Matthew Henkel brought duct tape, which he had been asked to obtain. Appellant, Elias, and Lischner took the tape and proceeded to Sycamore Street, where they met Brownlee and Jones. The five men discussed the missing safes and possible suspects. Elias asked Brownlee who had stolen the safes, and, when Brownlee responded that he did not know, Elias knocked him to the floor, began to beat him, and dragged him down the steps and into the kitchen. Jones was already in that room and was being held face down on the floor by Lischner.

Appellant and Lischner bound Jones' hands and feet with the duct tape while Elias did the same to Brownlee. The two victims were then taken upstairs and placed in different rooms, where they were questioned by all three defendants for several hours. Elias beat and threatened the two men and demanded that they disclose the location of the two safes. In addition, Elias choked Brownlee three times with a rope. Eventually, Brownlee was allowed to call a friend, who brought the three defendants $4,000 to secure Brownlee's and Jones' release. The friend left the money in the vehicle Jones and Brownlee had driven.

After receiving the cash, the three co-defendants still refused to let Brownlee and Jones leave. Appellant called his brother Matthew and asked him to borrow a pick-up truck and bring it, along with cement, to the Sycamore residence. Matthew obtained the truck but did not have money for the cement. He went to the Sycamore house with that vehicle and waited on the first floor with Appellant. While there, Matthew observed Elias and Lischner repeatedly traveling up and down the stairs. Appellant told Matthew that the three defendants believed that someone from inside the drug enterprise had stolen the safes. At one point, the three co-defendants conversed on the first floor. They all agreed that Jones was a dangerous person who would seek revenge for his torture if released but that Brownlee was not a threat to their safety. Appellant and Matthew then drove Brownlee to their residence in Mount Lebanon, Pennsylvania. Appellant did not return to the Sycamore residence.

Before Matthew left the Sycamore address with his brother and Brownlee, Elias told Matthew to obtain a fifty-pound weight from his father's house and return with it. Matthew complied. At Elias' command, Matthew went upstairs and helped Elias wrap Jones' body in garbage bags. Elias and Matthew loaded the body into the pick-up truck, and traveled to Steubenville, Ohio. On the way, the two men stopped at a home improvement store. Video surveillance showed that they separately purchased chains. During the drive to Ohio, Elias admitted to Matthew that he had killed Jones. Elias and Matthew disposed of Jones' body, which they weighed down with the chains and the weight, by throwing it over a bridge.

In exchange for immunity from prosecution, Matthew became a cooperating witness and showed police where he and Elias threw Jones' body from the bridge in Ohio. He testified at trial against Appellant, Elias, and Lischner. Counsel for the three co-defendants delved heavily into matters concerning Matthew's mental health and raised questions about his involvement in the kidnapping and murder, as well as his credibility. They also proffered that Matthew killed the victim because the victim had previously made fun of Matthew for being a homosexual. At trial, Appellant underwent a thorough colloquy regarding his right to testify and indicated that it was his decision not to take the stand.

The jury found Appellant guilty of the aforementioned crimes, but did acquit him of one count of aggravated assault and one count of simple assault. The court sentenced Appellant on January 22, 2004, to life imprisonment without parole on the murder count and a concurrent term of ten to twenty years imprisonment for criminal conspiracy to commit kidnapping/robbery. After the litigation of post-sentence motions, Appellant timely appealed. While the appeal was pending, Appellant filed a petition for remand under Pa.R.Crim.P. 720, alleging after-discovered evidence. Specifically, he attached a sworn affidavit from Matthew and his mother that she hypnotized Matthew to help him sleep, and in the process asked questions regarding the criminal episode. This Court denied the petition, but permitted Appellant to raise the issue on direct appeal.

Initially, this Court remanded the case for an evidentiary hearing as to Matthew's hypnotization. The panel retained jurisdiction and ultimately, in a published opinion, affirmed the judgment of sentence. *Commonwealth v. Henkel*, 938 A.2d 433 (Pa.Super.2007). The Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on August 25, 2008. *Commonwealth v. Henkel*, 598 Pa. 756, 955 A.2d 356 (2008).

Appellant filed a timely counseled PCRA petition on April 17, 2009. Therein, he raised three trial counsel ineffectiveness claims. Subsequently, he filed an amended petition on April 20, 2010, bringing his total number of ineffectiveness claims to eleven. In addition, he joined in the petitions filed by his two co-defendants as to the common arguments they each raised in their respective PCRA petitions. Appellant also submitted a twenty-page brief in support of his petition, but did not forward in his own petition a claim that trial counsel was ineffective in neglecting to adequately prepare him to testify. However, Lischner did present this position. According to Lischner and his trial attorney, Elias was going to testify and therefore they did not otherwise prepare to take the stand. After Appellant's father testified that Matthew admitted to committing the killing, Elias did not testify.

The court initially dismissed nine of Appellant's claims via a Pa.R.Crim.P. 907 notice of dismissal. It conducted a hearing on two issues: whether trial counsel was ineffective for (1) neglecting to subpoena cell phone tower logs to impeach the prosecution's timeline; and (2) for not seeking a severance. At the time of the PCRA hearing, Appellant's trial counsel was deceased.

The PCRA court consolidated the evidentiary hearings for Appellant, Lischner, and Elias. Appellant did not testify at the hearing. In contrast, Lischner and his trial attorney did testify, as did Elias and his trial lawyer. The PCRA court granted Lischner relief on the grounds that trial counsel did not properly prepare him to testify in the event that Elias did not take the stand. Lischner thereafter pled guilty to third-degree murder. The court denied

Appellant's and Elias' petitions on February 17, 2012.[1]

Appellant retained current PCRA counsel, who entered her appearance on March 1, 2012. Although time remained before the PCRA court lost jurisdiction, current counsel did not attempt to raise any additional issues. Instead, Appellant timely appealed on that same date. The PCRA court directed Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. After the PCRA court granted him an extension, Appellant complied. Therein, he raised for the first time, claims of PCRA counsel ineffectiveness.

This Court *sua sponte* granted *en banc* review in this matter to resolve a perceived conflict among authorities as to whether this Court may entertain claims of PCRA counsel ineffectiveness raised for the first time on appeal. The matter is now ready for this Court's review. Appellant raises the following issues for our consideration.

1. Whether PCRA counsel was ineffective for either overlooking the claim, or adopting the co-defendant's brief and then not presenting evidence supporting the claim that trial counsel was constitutionally ineffective for failing to consult with Appellant and entering into a joint defense agreement with co-defendants, Craig Elias and Jared Lischner, that backfired causing prejudice to Jared Henkel by leaving him unprepared to testify or present alternative strategy at trial?

2. Whether PCRA counsel was ineffective for failing to argue to the court that the jury should have been instructed that Matthew Henkel's confession to his father, Bruce Henkel,

---

1. This Court affirmed the denial of Elias' PCRA petition. *Commonwealth v. Elias*, 438 WDA 2012 (unpublished memorandum) (filed Oct. 23, 2013).

could be used as substantive evidence under clearly established federal law?

3. Whether PCRA counsel was ineffective for failing to argue that the admission of evidence of prior bad acts denied [Appellant] due process of law as the evidence did not fit into the chain of logical inferences no link of which may be the inference that the Appellant had the propensity to commit the crime charged?

4. Whether trial counsel was ineffective for not seeking to obtain Matthew Henkel's medical records before trial?

5. Whether trial counsel was ineffective for failing to confront and cross-examine Matthew Henkel regarding the penalties he faced if convicted of conspiracy to commit murder?

6. Whether trial counsel was ineffective for failing to object to the prosecutor's closing argument which capitalized on evidence of the prior bad acts that should not have been admitted in the first place to argue that the other crimes showed a propensity for violence?

7. Whether errors of trial counsel and PCRA counsel must be aggregated and considered collectively for prejudice?

Appellant's brief at 2–3.

■ This Court examines PCRA appeals "in the light most favorable to the prevailing party at the PCRA level." *Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa.Super.2012). Our "review is limited to the findings of the PCRA court and the evidence of record[.]" *Id.* Additionally, "[w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record." *Id.* In this respect, we will not "disturb a PCRA court's

ruling if it is supported by evidence of record and is free of legal error." *Id.* However, we afford no deference to its legal conclusions. *Id.* "[W]here the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary." *Id.* Whether a claim of PCRA counsel ineffectiveness can be raised for the first time on appeal is a question of law.

■ Appellant's first three issues all involve claims pertaining to PCRA counsel's representation. Neither party has cited the Pennsylvania Supreme Court's modern treatment of this issue in numerous cases. *Commonwealth v. Jette*, 611 Pa. 166, 23 A.3d 1032, 1044 n. 14 (2011); *Commonwealth v. Hill*, 609 Pa. 410, 16 A.3d 484, 497 n. 17 (2011); *Commonwealth v. Colavita*, 606 Pa. 1, 993 A.2d 874, 894 n. 12 (2010); *Commonwealth v. Pitts*, 603 Pa. 1, 981 A.2d 875 (2009); *Commonwealth v. Ligons*, 601 Pa. 103, 971 A.2d 1125 (2009) (plurality); *Commonwealth v. Potter*, 619 Pa. 174, 58 A.3d 752 (2012) (*per curiam* order). Nor have the parties addressed this Court's most comprehensive discussion of Pennsylvania Supreme Court precedent on this matter, *Commonwealth v. Ford*, 44 A.3d 1190 (Pa.Super.2012) (collecting cases). Those decisions all clarify that claims of PCRA counsel's ineffectiveness may not be raised for the first time on appeal.

Appellant begins by highlighting that his co-defendant, Lischner achieved relief on the issue of trial counsel's deficient stewardship for failing to fully advise Lischner about whether to testify on his own behalf. Lischner's trial attorney testified at the PCRA hearing that he did not prepare Lischner to testify because he understood that Elias was going to testify. When Elias elected not to testify, trial counsel was not prepared to present Lischner's

testimony and Lischner did not take the stand. Appellant submits that his original PCRA counsel should have presented the identical claim since they were similarly situated.

According to Appellant, although his trial counsel was deceased, his initial PCRA attorney should have presented Appellant's testimony as well as the testimony of trial counsel's litigation assistant. Instead, his original PCRA lawyer cursorily included within Appellant's PCRA brief that he joined in the brief of his co-defendants as to their common arguments. Additionally, initial PCRA counsel did not present any evidence regarding trial counsel's alleged failure to advise Appellant about testifying. Appellant asserts that his first PCRA lawyer was ineffective in this respect.

Appellant contends that this claim is properly before us because he has a rule-based right to collateral review counsel. He contends that to construe the issue as either waived or time barred would render the rule-based right to effective assistance of counsel "an illusion because it would be a state right without a state remedy." Appellant's brief at 21. While recognizing that *Martinez v. Ryan*, —— U.S. ——, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), might offer federal *habeas* review, he argues that not addressing the issue is a waste of judicial resources. *See also Trevino v. Thaler*, —— U.S. ——, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013). Finally, in a petition for remand filed after the *en banc* briefing in this matter, Appellant argues that his first claim is reviewable pursuant to *Commonwealth v. Pursell*, 555 Pa. 233, 724 A.2d 293 (1999).

As to his second and third issues, Appellant's argument is sparse. He maintains that PCRA counsel was ineffective in not arguing that the trial court erred in refusing trial counsel's request that the jury be instructed to consider Matthew's alleged

confession to his father as substantive evidence. This claim is untenable since the underlying issue was specifically litigated and rejected on direct appeal. Hence, the underlying claim of his derivative PCRA counsel ineffectiveness issue was found meritless. Appellant, relying largely on Pa.R.E. 404(b), also argues that PCRA counsel should have asserted that the trial court erred in allowing prior bad acts evidence to which trial counsel failed to object.

The Commonwealth counters that Appellant's PCRA counsel ineffectiveness matters are waived and time-barred. It recognizes that Appellant may be able to seek review on the merits of his first claim in federal court under *Martinez, supra*, but notes that this Court in *Commonwealth v. Saunders*, 60 A.3d 162 (Pa.Super.2013), properly concluded that *Martinez* does not affect the PCRA time-bar. With respect to Appellant's first issue, it also highlights that Appellant is not automatically entitled to relief since Appellant's trial counsel did not necessarily provide the same advice as Lischner's attorney regarding whether to testify.

The Commonwealth points out that Appellant's assertion that he would have testified at the PCRA hearing that trial counsel did not consult with him about testifying "is directly contrary to his testimony during the [trial] colloquy at which he waived his right to testify." Commonwealth's brief at 31. Since Appellant had a duty to testify truthfully during that colloquy, the Commonwealth posits that he cannot "contradict that sworn testimony." *Id.*

To provide a better understanding of whether claims of deficient stewardship can be leveled for the first time on appeal, we outline the history of the right to collateral review counsel in Pennsylvania and the concomitant right to effective repre-

sentation. Prior to 1966, defendants seeking post-conviction relief relied on common law writs such as *habeas corpus* and *coram nobis*. In 1966, the General Assembly passed the predecessor to the PCRA, the Post–Conviction Hearing Act ("PCHA"). That statute provided a statutory right to counsel for indigent petitioners who requested counsel. *See* 1966, January 25, P.L. (1965) 1580, no. 554, § 12 ("If the petitioner is without counsel and alleges that he is without means to procure counsel, he shall state whether or not he wishes counsel to be appointed to represent him. If appointment of counsel is so requested, the court shall appoint counsel if satisfied that the petitioner has no means to procure counsel."). Shortly thereafter, in *Commonwealth v. Mitchell*, 427 Pa. 395, 235 A.2d 148 (1967), the Supreme Court impliedly recognized that this right included the right to effective representation. *Id.* at 149 ("[c]ounsel's ability to frame the issues in a legally meaningful fashion insures the trial court that all relevant considerations will be brought to its attention.").

Following the passage of the 1968 Pennsylvania Constitution, which conferred broad procedural rule-making powers to the Pennsylvania Supreme Court, the Supreme Court replaced the statutory right to collateral review counsel with a rule-based right to counsel. *See Commonwealth v. Adams*, 465 Pa. 389, 350 A.2d 820 (1976). Both the Pennsylvania Supreme Court and this Court consistently recognized that this right entitled petitioners to effective assistance of PCHA counsel. *Commonwealth v. Albert*, 522 Pa. 331, 561 A.2d 736, 738 (1989) ("the right to counsel is meaningless if effective assistance is not guaranteed. Since appellant was entitled to representation by an attorney in his pursuit of this collateral attack, he was entitled to adequate representation of his claims at both the hearing and appellate

levels."); *Commonwealth v. Carrier*, 494 Pa. 305, 431 A.2d 271 (1981); *Commonwealth v. Sangricco*, 490 Pa. 126, 415 A.2d 65 (1980); *Commonwealth v. Scott*, 469 Pa. 381, 366 A.2d 225 (1976); *Commonwealth v. Fiero*, 462 Pa. 409, 341 A.2d 448 (1975); *Commonwealth v. Davis*, 363 Pa.Super. 469, 526 A.2d 440 (1987); *Commonwealth v. Ollie*, 304 Pa.Super. 505, 450 A.2d 1026 (1982); *Commonwealth v. Hines*, 287 Pa.Super. 291, 430 A.2d 291 (1981); *Commonwealth v. Zaborowski*, 283 Pa.Super. 132, 423 A.2d 1023 (1980); *Commonwealth v. Irons*, 254 Pa.Super. 251, 385 A.2d 1004 (1978); *Commonwealth v. King*, 253 Pa.Super. 224, 384 A.2d 1314 (1978).

The rule-based right to collateral review counsel during an initial post-conviction matter remained after the passage of the PCRA in 1988. Currently, that right is guaranteed by Pa.R.Crim.P. 904. Rule 904 reads in relevant part, "when an unrepresented defendant satisfies the judge that the defendant is unable to afford or otherwise procure counsel, the judge shall appoint counsel to represent the defendant on the defendant's first petition for post-conviction collateral relief." Pa.R.Crim.P. 904(C). This right extends "throughout the post-conviction collateral proceedings, including any appeal from disposition of the petition for post-conviction collateral relief." Pa.R.Crim.P. 904(F)(2). Again, Pennsylvania courts routinely recognized the right to effective PCRA counsel. *Commonwealth v. Jones*, 572 Pa. 343, 815 A.2d 598 (2002) (OAJC); *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693 (1998); *Commonwealth v. Priovolos*, 552 Pa. 364, 715 A.2d 420 (1998); *Commonwealth v. Blackwell*, 936 A.2d 497 (Pa.Super.2007); *Commonwealth v. Perez*, 799 A.2d 848 (Pa.Super.2002); *Commonwealth v. Powell*, 787 A.2d 1017 (Pa.Super.2001); *Commonwealth v. Hampton*, 718 A.2d

1250 (Pa.Super.1998); *cf. Commonwealth v. Wiley,* 966 A.2d 1153 (Pa.Super.2009).

In *Commonwealth v. Dancer,* 460 Pa. 95, 331 A.2d 435 (1975), and later in *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687, 695 n. 6 (1977), the Pennsylvania Supreme Court pronounced that claims of ineffective assistance of counsel must be raised at the first opportunity, *i.e.,* whenever new counsel entered the case. Accordingly, claims of ineffectiveness, including PCHA and PCRA counsel, could be set forth for the first time on appeal. *Commonwealth v. Hall,* 582 Pa. 526, 872 A.2d 1177, 1182–1183 (2005); *Commonwealth v. Kenney,* 557 Pa. 195, 732 A.2d 1161, 1164 (1999); *Pursell, supra; Albrecht, supra; Priovolos, supra; Commonwealth v. Burkett,* 5 A.3d 1260 (Pa.Super.2010); *Commonwealth v. Malone,* 823 A.2d 931 (Pa.Super.2003); *Commonwealth v. Lauro,* 819 A.2d 100 (Pa.Super.2003); *Commonwealth v. Jones,* 507 Pa. 580, 493 A.2d 662, 664 n. 2 (1985); *Commonwealth v. Klinger,* 323 Pa.Super. 181, 470 A.2d 540 (1983); *Commonwealth v. Simmons,* 312 Pa.Super. 501, 459 A.2d 14 (1983), *reversed on other grounds,* 504 Pa. 565, 475 A.2d 1310 (1984); *Commonwealth v. Ramsey,* 300 Pa.Super. 515, 446 A.2d 974 (1982).

*Hubbard* was the prevailing law at the time of the passage of the PCRA in 1988. It remained viable at the time the legislature amended the PCRA statute in 1995 to enact the one-year time bar, 42 Pa.C.S. § 9545. The time-bar declared that all petitions, including second or subsequent petitions, must be filed within one year of the finality of a defendant's judgment of sentence. 42 Pa.C.S. § 9545(b). In 1995, no case considered an allegation of PCRA counsel's ineffectiveness raised on appeal pursuant to *Hubbard* as a prohibited "second or subsequent" PCRA petition, and the timeliness provision was not implicated in assessing such an issue. Indeed, before

*Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002), it was well settled that PCRA petitioners not only could, but had to assert claims of PCRA counsel ineffectiveness for the first time on appeal if they were no longer represented by that PCRA attorney. *See e.g. Kenney, supra; Pursell, supra; Priovolos, supra; Albrecht, supra; Albert, supra; see also* 42 Pa.C.S. § 9544(b) ("For purposes of this subchapter, an issue is waived if the petitioner could have raised but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding.").

In 2002, the *Grant* Court determined that claims of trial counsel ineffectiveness would be deferred until PCRA review. In doing so, it overturned the harsh waiver rule in *Hubbard,* which required ineffective assistance of counsel claims to be raised at the first opportunity. It did not, however, speak to the issue of raising PCRA counsel claims of ineffectiveness for the first time on appeal.

In *Moore, supra,* Justice, now Chief Justice Castille, in a concurring and dissenting opinion, first expressed his view that reviewing ineffective assistance of post-conviction counsel on appeal was in tension with the PCRA statute. Then–Justice Castille opined that presenting new claims of PCRA counsel ineffectiveness subverted the PCRA time bar. In addition, he maintained that, in reaching the claims on discretionary review, the Supreme Court acted as a second PCRA court and outside its appellate role. Justice Castille argued that because the issue was not raised in a PCRA petition or amendment thereto, "it can now be raised only via a second or subsequent petition filed in the PCRA court." *Moore, supra* at 1224. In his view, "[b]y reaching a claim never presented in the PCRA petition that was actually filed and was at issue on direct appeal, the

plurality, by judicial fiat, would essentially create an 'end-around' the General Assembly's clear and unequivocal restrictions upon serial post-conviction petitions." *Id.*

Thereafter, in *Jones, supra,* Justice Castille authored an opinion announcing the judgment of court that ultimately addressed issues of PCRA counsel ineffectiveness that Jones first leveled on appeal. However, he again expressed reservations about the practice and reiterated his view that doing so conflicted with the PCRA statute. Justice Castille's *Jones* decision recognized that existing precedent permitted appellate courts to review such claims. He stated, "[o]bviously, if new counsel is *required* to raise claims of predecessor counsel ineffectiveness upon appeal, upon pain of judicial waiver, the appellate court must be prepared to entertain those claims." *Jones, supra* at 609 (italics in original). Nevertheless, he reiterated his view in *Moore, supra,* asserting that there was "tension between the PCRA amendments and our judicial rule requiring certain claims of PCRA counsel ineffectiveness to be raised for the first time on appeal." *Id.*

Justice Castille continued that, "in the non-*Hubbard* context, this Court has declined to entertain new claims that would act to subvert the PCRA's new time and serial petition restrictions[.]" *Id.* Accordingly, he reasoned, "[a]s a PCRA matter, then, these issues, not having been raised in the initial and amended petitions below, should properly be the subject of a second PCRA petition, which would be subject to the time limitation and serial petition restrictions contained in § 9545(b) of the PCRA." *Id.* at 610.

Subsequently, in *Hall, supra,* the Pennsylvania Supreme Court again addressed issues regarding the competence of PCRA counsel that an appellant advanced for the first time on appeal. *Hall* also involved a post–1995 amendment petition that the defendant filed before the decision in *Grant.* A jury convicted Hall of capital murder. The Supreme Court affirmed his judgment of sentence in 1997. Hall filed a timely *pro se* PCRA petition. Initial assigned PCRA counsel filed an amended petition and the court held an evidentiary hearing. After the evidentiary hearing, the court appointed new counsel. The PCRA court denied the petition. Replacement PCRA counsel filed a notice of appeal, and a third PCRA attorney entered her appearance.

On appeal, Hall raised allegations of PCRA counsel ineffectiveness. The High Court reached the issues and affirmed. Justice Castille penned a concurring opinion asserting that it remained an open question as to whether such issues would be considered in future cases based on the jurisdictional time restriction. The legislature, though aware of the issue as early as 2002, did not amend the PCRA statute to adopt or reject Justice Castille's position.

The issue of whether a PCRA petitioner can raise a claim of PCRA counsel ineffectiveness for the first time after a notice of appeal was filed in post-*Grant* petitions came to a head in *Ligons, supra.* Therein, "a three-to-three split occurred among the Justices as to whether claims of capital PCRA counsel effectiveness could be addressed when they were not raised in a PCRA petition." *Ford, supra* at 1195 (discussing *Ligons* ). Specifically, Chief Justice Castille authored an opinion setting forth the plurality's belief that a petitioner cannot forward such claims for the first time on appeal. Justice Baer, joined by Justice Saylor and Justice Todd disagreed.

In *Ligons,* the represented petitioner submitted a *pro se* motion after the court issued a final order following an evidentiary hearing, which dismissed his guilt-phase claims. Ligons requested new counsel and asked to raise a jury selection argument

that he had not previously raised. The PCRA court declined to appoint new counsel, but allowed previously appointed counsel to present the new claim and addressed the issue on its merits. New PCRA counsel then filed a notice of appeal and entered an appearance, raising six more issues pertaining to initial PCRA counsel's effectiveness that were not preserved below.

Writing the lead opinion, Justice Baer reached the merits of the PCRA ineffectiveness claims. According to Justice Baer, allowing petitioners to forward such issues was "the only method to enforce a defendant's right to effective PCRA trial counsel." *Ford, supra* at 1196 (discussing *Ligons*). Justice Baer relied on *Hall, supra, Pursell, supra,* and *Albrecht, supra,* in support. He pointed out that petitioners would not be able to present PCRA counsel ineffectiveness claims during a PCRA proceeding because the proceeding would not have ended. Justice Baer added that § 9545's one-year time bar would prevent a petitioner from being able to vindicate his right to effective PCRA counsel in a timely petition. In his view, declining to review PCRA ineffectiveness claims initially advanced on appeal "renders a PCRA petitioner's right to effective representation unenforceable and, therefore, meaningless." *Ligons, supra* at 1139. Additionally, he and his two colleagues rejected Chief Justice Castille's assertion that supervision by the PCRA court would adequately protect a petitioner's right to effective collateral review counsel.

Interpreting the PCRA statute in a post-*Grant* light, Chief Justice Castille posited that analyzing PCRA-counsel-ineffectiveness matters not presented to the PCRA court ignores "the PCRA's express jurisdictional and serial petition limitations." *Ligons, supra* at 1159. The Chief Justice added that "the notion that there must be some formalized, PCRA-like procedure for vindication of claims of PCRA counsel ineffectiveness, if taken to its logical conclusion, would require approval of an infinite series of collateral attacks." *Id.* at 1161.

Following *Ligons,* in *Pitts, supra,* the Pennsylvania Supreme Court held for the first time that a petitioner cannot allege PCRA counsel's ineffectiveness for the first time on appeal. *Pitts* involved a PCRA proceeding wherein PCRA counsel filed a *Turner/Finley* no-merit letter and requested to withdraw. After reviewing the record and the no-merit letter, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss. Pitts, still technically represented by counsel, did not respond. The court entered a final order and allowed counsel to withdraw. Pitts filed a *pro se* appeal. In his appeal, he set forth a new claim, namely, that PCRA counsel was ineffective in neglecting to assert plea counsel's ineffectiveness in not filing a direct appeal. This Court initially vacated the order and remanded for an evidentiary hearing. Panel re-argument was granted, and the panel again remanded for an evidentiary hearing on the grounds that PCRA counsel's *Turner/Finley* no-merit letter was insufficient. The Commonwealth appealed to our Supreme Court.

In two separate footnotes, the *Pitts* majority mandated that a petitioner raise any allegations of PCRA counsel ineffectiveness in response to the PCRA court's notice of dismissal. The *Pitts* Court stated, "The Commonwealth asserts Pitts waived any issue pertaining to the adequacy of PCRA counsel's no-merit letter by failing to raise it during Rule 907's 20–day response period. We agree, finding Pitts's failure to challenge PCRA counsel's withdrawal upon his receipt of counsel's no-merit letter or within the 20–day period

telling." *Pitts, supra* at 879 n. 3. The Court continued,

> Pitts's failure, prior to his PCRA appeal, to argue PCRA counsel's ineffectiveness for not raising the direct appeal issue results in waiver of the issue of PCRA counsel's ineffectiveness. Pitts's attempt to obtain review, on collateral appeal, of an issue not raised in the proceedings below amounts to a serial PCRA petition on PCRA appeal. Although Pitts asserts his PCRA appeal was the first opportunity he had to challenge PCRA counsel's stewardship because he was no longer represented by PCRA counsel, he could have challenged PCRA counsel's stewardship after receiving counsel's withdrawal letter and the notice of the PCRA court's intent to dismiss his petition pursuant to Pa. R.Crim.P. 907, yet he failed to do so. Thus, the issue of whether PCRA counsel was ineffective for failing to raise the direct appeal issue was waived, and the Superior Court should not have reached it.

*Pitts, supra* at 880 n. 4.

Chief Justice Castille penned a secondary opinion reiterating his views in *Ligons* and Justice Baer authored a dissenting opinion disagreeing with the *Pitts* footnotes. Justice Baer opined that a response to a notice of dismissal was optional and failing to respond did not result in waiver. Consistent with his *Ligons* decision, he added that raising the claims in the PCRA court was unworkable. According to Justice Baer, "[a] PCRA petitioner could never demonstrate that he was prejudiced by PCRA counsel's performance, *i.e.*, demonstrate that the outcome of the PCRA proceeding would have been different, when the PCRA proceeding has not yet concluded and no ruling by the PCRA court has been issued." *Pitts, supra* at 891 (Baer, J. dissenting).

Subsequently, in *Colavita, supra,* during discretionary review of a Commonwealth PCRA appeal, our Supreme Court cited *Pitts* and, though stating the issue was not before the Court, opined that a petitioner could not raise PCRA appellate counsel's ineffectiveness for the first time on appeal. *Colavita, supra* at 893 n. 12. In *Colavita,* a jury convicted the defendant of third-degree murder in 2003. This Court affirmed, and our Supreme Court denied discretionary review. Colavita filed a timely PCRA petition arguing that trial counsel was ineffective for failing to object to the prosecutor's opening and closing summations and cross-examination about the fact that Colavita retained counsel after the death of the victim, but before his arrest. Colavita argued that references to his retention of counsel before his arrest violated his Sixth Amendment right to counsel. The PCRA court dismissed the petition without a hearing. A panel of this Court reversed, finding that the prosecutor's comments violated the defendant's Fourteenth Amendment due process rights. The Commonwealth appealed.

The Commonwealth argued to the Supreme Court that Colavita's petition and original brief to this Court did not proffer an alleged violation of his due process rights. According to the Commonwealth, Colavita's argument focused on his Sixth Amendment right to counsel and that the panel had expanded that right to include pre-arrest consultation with a lawyer under a due process analysis. The *Colavita* Court agreed, holding that the panel had *sua sponte* afforded relief on a distinct constitutional theory not presented to it. Colavita, however, who was represented by new counsel before the Supreme Court, responded to the Commonwealth's position by averring that prior PCRA counsel was ineffective for not presenting the due process position. Citing *Pitts, supra,* the *Co-*

*lavita* Court stated, "Our discretionary grant of the Commonwealth's *allocatur* petition did not encompass such a new claim. Hence, it is not properly before this Court. Moreover, claims of PCRA counsel ineffectiveness may not be raised for the first time at the direct appeal level, much less at the discretionary appeal level." *Colavita, supra* at 893 n. 12. No Justice dissented.

Post–*Ligons, Pitts,* and *Colavita,* this Court in *Burkett, supra,* addressed whether this Court could review a PCRA petitioner's claim of ineffective assistance of collateral review counsel where the petitioner raised the issue on appeal in the first instance. In *Burkett,* the petitioner filed his first PCRA petition in 1993, *i.e.,* pre-*Grant.* It was not until the PCRA court appointed a seventh attorney that counsel filed an amended petition. Due to serial instances of abandonment of PCRA counsel, Burkett's petition was not resolved until March 27, 2009, after the conduct of an evidentiary hearing. Burkett's petition, nonetheless, was ruled upon prior to both *Pitts,* which the Supreme Court decided on October 20, 2009, and *Colavita.*

On appeal, Burkett specifically alleged, among other issues not pertinent herein, that PCRA counsel was ineffective in failing to call appellate counsel to testify at the PCRA hearing. Noting that *Ligons* was a plurality decision, this Court concluded that, because the PCRA court was not required to file nor did it file a Rule 907 notice in Burkett's case, *Pitts* did not apply since that decision involved a defendant's failure to advance the issue in response to the Rule 907 notice. We did not confront the *Colavita* footnote. Indeed, at that time, it was plausible to consider the footnote *dicta* since the Court had expressly stated that the issue was not before it. *But see Jette, supra* at 1046 (Pa.2011) (Castille, C.J. concurring).

However, any question as to the effect of *Pitts* and *Colavita* was largely removed in *Jette, supra,* which was issued after *Burkett.* In *Jette,* after an evidentiary hearing, the court dismissed the petitioner's PCRA petition. Counsel filed an appeal and a brief addressing one issue. Jette submitted a *pro se* brief contending that PCRA counsel was ineffective in several respects. This Court forwarded the *pro se* brief to counsel and requested a response.

After receiving the response, wherein counsel asked for a remand for the appointment of new counsel, we filed a published opinion instructing counsel to file a proper petition for remand. Counsel again complied, and this Court found that Jette was entitled to new counsel. The Commonwealth appealed. The Pennsylvania Supreme Court in *Jette,* even though the PCRA court did not disseminate a Rule 907 notice due to the conduct of a hearing, held that claims of PCRA counsel ineffectiveness cannot be leveled for the first time on appeal, stating:

> we find that Appellee's argument that in the PCRA context, given its serial petition and time-bar restrictions, he "must raise all claims of ineffective assistance of counsel at this stage … or forever waive those claims," Appellee's brief at 9, is contrary to this Court's recent jurisprudence, which we realize was decided after the panel issued its decision in this case. *See Commonwealth v. Colavita,* 606 Pa. 1, 993 A.2d 874, 893 n. 12 (2010) (unanimous opinion) ("claims of PCRA counsel ineffectiveness may not be raised for the first time at the direct appeal level, much less at the discretionary appeal level.") (citing *Commonwealth v. Pitts,* 603 Pa. 1, 981 A.2d 875, 880 n. 4 (2009)). The waiver of such claims, however, is not a foregone conclusion. While difficult, the filing of a

subsequent timely PCRA petition is possible, and in situations where an exception pursuant to § 9545(b)(1)(i-iii) can be established a second petition filed beyond the one-year time bar may be pursued. Moreover, if an appellant remains adamant that the claims foregone by counsel provide the better chance for success, he can avoid the potential loss of those claims by timely exercising his desire to self-represent or retain private counsel prior to the appeal.

*Jette, supra* at 1044 n. 14.

As noted, in *Jette,* as in *Burkett,* the PCRA court did not file a notice of intent to dismiss because it held a hearing. However, the *Jette* Court did not distinguish *Pitts* on that ground and signaled that *Colavita* was binding precedent on the issue of whether a claim of PCRA counsel ineffectiveness could be raised for the first time on appeal. Consequently, the Supreme Court concluded after the *Burkett* decision that a PCRA petitioner cannot assert claims of PCRA counsel ineffectiveness for the first time on appeal, regardless of whether a Rule 907 or 909 notice is involved.

In *Hill,* the Supreme Court discussed the issue similarly. *Hill* was decided before both *Jette* and *Ford* and after *Burkett.* In *Hill,* the matter was a capital PCRA where the PCRA court had conducted evidentiary hearings in 2006 and denied guilt phase relief, though it had earlier granted a new sentencing proceeding. PCRA counsel failed to file a Pa.R.A.P. 1925(b) statement, which in the context of a direct appeal is considered *per se* ineffectiveness. Despite the capital nature of the case, the *Hill* Court concluded that Hill waived all of her issues.

The Commonwealth actually argued that PCRA counsel was ineffective, but the majority stated, "we note that even if appellant had raised present counsel's ineffectiveness for failing to file a Rule 1925(b) statement. . . . **such a claim would not be cognizable in this collateral direct appeal under recent decisions of this Court.**" *Hill, supra* at 497 n. 17 (citing *Colavita* and *Pitts* ) (emphasis added). Justice Saylor expressly dissented "in light of the ongoing developments in this area— including the apparent curtailment of an enforcement mechanism to assure the even-handed enforcement of a capital post-conviction petitioner's rule-based right to assistance of counsel and the concomitant requirement of effective stewardship[.]" *Id.* at 498 (Saylor, J. dissenting).

Following the decisions in *Jette* and *Hill,* this Court revisited the subject in *Ford, supra.* A cursory reading of *Ford* demonstrates that the panel considered the *Burkett* decision, as it discussed the case at length. In light of intervening case law from the Pennsylvania Supreme Court, the *Ford* panel found that, absent an argument that there is a constitutional right to initial collateral review counsel, a petitioner cannot raise PCRA counsel claims of ineffectiveness for the first time on appeal.[2]

In *Ford,* the PCRA court conducted an evidentiary hearing and denied relief. PCRA counsel filed a notice of appeal one day late. An earlier panel of this Court, in an unpublished memorandum, quashed the appeal. Ford filed a petition for allowance of appeal alleging his PCRA counsel's ineffectiveness based on the untimely appeal, and PCRA counsel requested to withdraw before the PCRA court. The Pennsylvania Supreme Court remanded for a determination as to the status of counsel and directed that the petitioner could file a *nunc pro*

---

**2.** Appellant has not advanced any argument that either the federal constitution or Pennsyl-

vania Constitution protects a right to effective PCRA counsel.

*tunc* appeal within thirty days of a determination of PCRA counsel's status.

The PCRA court appointed new counsel. In the reinstated PCRA appeal, new counsel, in Ford's 1925(b) concise statement, alleged original PCRA counsel was ineffective for neglecting to raise an issue in the initial proceeding. After surveying existing precedent, we held, "a majority of the Supreme Court agrees that issues of PCRA counsel effectiveness must be raised in a serial PCRA petition or in response to a notice of dismissal before the PCRA court." *Id.* at 1200.

After *Ford,* in *Commonwealth v. Potter,* 619 Pa. 174, 58 A.3d 752 (2012), the Supreme Court reversed a memorandum decision of this Court on the grounds that *Pitts* "and its progeny" preclude raising an issue "of PCRA counsel ineffectiveness that was not raised in the PCRA court[.]" *Id.*[3] Most recently, in *Commonwealth v. Holmes,* —— Pa. ——, 79 A.3d 562 (2013), the High Court opined that "there is no formal mechanism in the PCRA for a second round of collateral attack focusing upon the performance of PCRA counsel, much less is there a formal mechanism designed to specifically capture claims of trial counsel ineffectiveness defaulted by initial-review PCRA counsel." *Id.* at 583–584. The *Holmes* Court continued that it "has struggled with the question of how to enforce the 'enforceable' right to effective PCRA counsel within the strictures of the PCRA, as the statute was amended in 1995." *Id.* at 584.

The Court noted that "[t]he question of whether and how to vindicate the right to effective PCRA counsel has been discussed at length in majority opinions and in responsive opinions in cases such as *Commonwealth v. Ligons,* 601 Pa. 103, 971 A.2d 1125 (Pa.2009) and *Commonwealth v. Pitts,* 603 Pa. 1, 981 A.2d 875 (Pa.2009)." *Id.* However, it conceded that "no definitive resolution has emerged." *Id.* The Court in *Holmes* pointed out that *Martinez, supra* might offer a solution at the federal *habeas* level, but that the *Holmes* matter was not the proper vehicle to take action. Instead, it opined, "it should await either the action of the General Assembly—in response to *Martinez* and cases such as *Ligons* and *Pitts*—or a case where the issue is properly joined." *Id.* There would be no need for the High Court to revisit its prior decisions, fashion a new remedy, or for there to be legislative action if defendants could presently raise for the first time on appeal claims regarding the effectiveness of initial PCRA counsel.

We are cognizant that failing to address PCRA counsel ineffectiveness claims raised for the first time on appeal renders any effective enforcement of the rule-based right to effective PCRA counsel difficult at the state level. *See Commonwealth v. Paddy,* 609 Pa. 272, 15 A.3d 431, 479 (2011) (Saylor, J. concurring and dissenting) ("a majority of the Court now appears to be suggesting that there effectively can be no state-level redress for such deficient [PCRA counsel] stewardship."). Further, it opens the door to *de novo* federal habeas review of the underlying trial counsel ineffectiveness claim based on both *Martinez* and *Trevino, supra.*[4]

---

**3.** We are cognizant that *per curiam* orders are not binding precedent. *See Commonwealth v. Thompson,* 604 Pa. 198, 985 A.2d 928 (2009). Nevertheless, they may provide persuasive authority for how our Supreme Court would decide an issue.

**4.** Possible non-legislative solutions to alleviate the problem could include requiring a notice of intent to dismiss in all first-time petition cases, even after an evidentiary hearing, or replacement of the notice of dismissal requirement with a post-PCRA motion practice. In this latter respect, the Supreme Court pro-

Appellant has not attempted to distinguish Supreme Court precedent nor argued that the PCRA time bar and its utilization of the term "second or subsequent petition" does not prohibit claims of PCRA counsel ineffectiveness from being raised in an initial PCRA appeal. More importantly, our Supreme Court has expressly determined otherwise.[5] *See Jette, supra; Hill, supra; Colavita, supra; Pitts, supra; see also Ligons, supra* (Castille, C.J. concurring). Therefore, Appellant's first three claims are unreviewable.[6]

 The fourth issue Appellant advances on appeal is that trial counsel performed ineffectively in neglecting to obtain his brother's medical records before trial, specifically his mental health history. "To plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." *Commonwealth v. Chmiel,* 612 Pa. 333, 30 A.3d 1111, 1127 (2011). Where the petitioner fails to meet any aspect of this test, his claim fails. *Burkett, supra* at 1272.

Appellant contends that counsel did not conduct a reasonable pretrial investigation into Matthew's medical history or obtain Matthew's medical records. According to Appellant, had counsel obtained these medical records he could have established that Matthew "had significant psychiatric problems[.]" Appellant's brief at 28. Appellant also submits that the statutory privilege relative to communications between a person and a psychiatrist or licensed psychologist does not apply to medical records that contain impeachment material. He baldly asserts that the legislature cannot enact a statute depriving a person of constitutional rights.

cedural rules committee could consider requiring PCRA judges to give reasons for dismissal when issuing a final order in all first-time petition cases and provide a window to present PCRA counsel ineffectiveness claims. Similar to a post-sentencing motion following a revocation proceeding, the post-PCRA motion would not have to toll the period for filing an appeal. However, it would provide petitioners an opportunity to request leave to file an amended petition alleging PCRA counsel ineffectiveness claims or otherwise raise the issue. Of course, hybrid representation concerns might have to be set aside in cases where counsel is not attempting to withdraw. This Court, of course, is without authority to promulgate procedural rules. *See Commonwealth v. Liston,* 602 Pa. 10, 977 A.2d 1089 (2009).

5. Appellant does not contend that application of the time-bar to his PCRA ineffectiveness claims is unconstitutional as applied. *See Commonwealth v. Brown,* 596 Pa. 354, 943 A.2d 264, 268 n. 4 (2008).

6. Our decision today does not impact those cases in which a PCRA court fails to appoint counsel or the appointment of counsel is a mere formality and counsel fails to meaning-

fully represent his client during critical stages of the PCRA proceedings, including failing to file either an amended petition or a *Turner/Finley* no-merit letter. *See Commonwealth v. Stossel,* 17 A.3d 1286 (Pa.Super.2011); *see also Commonwealth v. Willis,* 29 A.3d 393 (Pa.Super.2011); *cf. Commonwealth v. Wiley,* 966 A.2d 1153 (Pa.Super.2009) (remanding for additional proceedings despite finding that petition was facially untimely where counsel failed to meaningfully participate in earlier PCRA proceedings); *Commonwealth v. Perez,* 799 A.2d 848 (Pa.Super.2002); *cf. Commonwealth v. Tedford,* 566 Pa. 457, 781 A.2d 1167, 1171 (2001) ("the PCRA court erred by dismissing Appellant's *pro se* PCRA Petition rather than directing Appellant to file an amended petition with legal assistance"); *Commonwealth v. Duffey,* 551 Pa. 675, 713 A.2d 63 (1998); *Commonwealth v. Williams,* 573 Pa. 613, 828 A.2d 981, 990 (2003) (*"Tedford* and *Duffey* stand for the proposition that if a court dismisses a *pro se* petition prior to the appointment of counsel, a subsequent counseled petition may not be treated as an untimely second petition.").

The Commonwealth counters that mental health records are privileged, *see* 42 Pa.C.S. § 5944, and that Matthew's attorney unequivocally asserted that privilege. Since this information was privileged, it maintains that trial counsel was not ineffective in not securing that information. The Commonwealth adds that the alleged impeachment material Appellant seeks are privileged statements made by Matthew, and that due process and the right to cross-examine a witness does not remove that privilege. We agree. As our Supreme Court held in *Commonwealth v. Dowling*, 584 Pa. 396, 883 A.2d 570, 575 (2005), "the statutory privilege pursuant to Section 5944 is not outweighed by a defendant's right to cross-examine witnesses or his due process rights." This claim therefore lacks arguable merit.

Next, Appellant, in a three-sentence argument, posits that trial counsel was ineffective in failing to confront Matthew about the penalties he faced if he was convicted of conspiracy to commit murder. The Commonwealth replies that Appellant failed to develop adequately this issue. Alternatively, it asserts that Appellant cannot demonstrate prejudice. It points out that the jury was aware that Matthew entered into an agreement with the prosecution to testify and heard his own testimony establishing his involvement in the crimes. As Appellant's argument is mere boilerplate, it fails. *Commonwealth v. Steele*, 599 Pa. 341, 961 A.2d 786, 801–802 (2008).

 Appellant's penultimate claim is that trial counsel was ineffective in failing to object during closing argument to the prosecution's mention of prior bad acts and the comment that Appellant and his co-defendants were "immersed in this lifestyle of thuggery[.]" N.T., 10/14–21/03, at 1236–1237. Appellant contends that evidence that he allegedly robbed a person of a backpack and entered into random fights should not have been admitted.

In this respect, Anthony Brownlee testified that the three men told him about an incident where they hit a person with a crowbar and stole his book bag in order to steal marijuana. N.T., 10/14–21/03, at 122. Brownlee also stated that he observed Appellant and Lischner beat up an individual whom they suspected of burglarizing the residence of one of Brownlee's friends. *Id.; see also id.* at 202 (wherein Appellant's trial counsel elicited the identical information). Matthew also testified that Appellant and his codefendants told him that they had pistol-whipped a person and tried to rob him.

Appellant submits that the prosecution relied on this evidence to describe him as living a lifestyle of thuggery. Without citation or discussion of any legal authority, Appellant claims that no attorney would have failed to object and that had counsel objected there is a reasonable probability the outcome of the trial would have been different.[7] The Commonwealth replies that the prosecutor's comment was oratorical flair, that the jury was properly instructed about the defendants' prior bad acts during direct examination of Brownlee, and that Appellant has failed to present argument on prejudice.

---

7. Appellant's trial attorney expressly declined to object to the prosecutor's assertion prior to his opening statement that he intended to mention that the co-defendants had used violence on prior occasions. *See* N.T., 10/14–21/03, at 12. The prosecutor in his opening statement did briefly mention that the victim and co-defendants "had on several occasions used violence to further their own activities in the form of beating and robbing of other drug dealers." *Id.* at 35. Indeed, Appellant's trial counsel openly stated in his opening that "there were beatings administered prior to this time." *Id.* at 71.

Appellant's issue fails for multiple reasons. First, it is inadequately developed and argued, as he does not cite to any pertinent legal authority. *Steele, supra.* Second, the prosecutor based his comment on evidence that was held admissible by the trial court and the brief comment was not so inherently prejudicial as to deny Appellant a fair trial, and amounts to oratorical flair. *See Commonwealth v. Philistin,* 617 Pa. 358, 53 A.3d 1, 17 (2012); *Commonwealth v. Sneed,* 616 Pa. 1, 45 A.3d 1096, 1110 (2012).

The final position Appellant raises on appeal is that the cumulative errors of trial counsel entitle him to a new trial. Our Supreme Court has stated, "if multiple instances of deficient performance are found, the assessment of prejudice properly may be premised upon cumulation." *Commonwealth v. Johnson,* 600 Pa. 329, 966 A.2d 523, 532 (2009); *Commonwealth v. Spotz,* 610 Pa. 17, 18 A.3d 244, 321 (2011) ("When the failure of individual claims is grounded in lack of prejudice, then the cumulative prejudice from those individual claims may properly be assessed."). Again, Appellant fails to develop any adequate argument on this claim. Furthermore, Appellant's first three issues cannot be reviewed, his fourth claim lacks arguable merit, and his fifth and sixth issue were not adequately developed. Therefore, he has not established prejudice based on alleged cumulative errors.

Order affirmed. Petition for Remand for Evidentiary Hearing Following *En Banc* Argument is denied.

P.J.E. FORD ELLIOTT, Judges DONOHUE, ALLEN, and OTT join the majority.

Judge GANTMAN Concurs in the Result.

P.J. BENDER files a Dissenting Opinion in which Judges LAZARUS and WECHT join.

### DISSENTING OPINION BY BENDER, P.J.

I respectfully disagree with the Majority's conclusion that we are unable to review Appellant's first three claims challenging his PCRA counsel's representation. As discussed herein, I do not believe that there has been a binding, precedential decision by our Supreme Court prohibiting review of such issues for the first time on appeal, especially under the procedural posture of this case. Moreover, contrary to the Majority's view, I think that this Court has presented conflicting opinions on the question of when, if ever, PCRA counsel's ineffectiveness may be challenged for the first time on appeal. *See Commonwealth v. Ford,* 44 A.3d 1190 (Pa.Super.2012); *Commonwealth v. Burkett,* 5 A.3d 1260 (Pa.Super.2010). For the reasons that follow, I would resolve these conflicting panel decisions by overruling *Ford* and upholding *Burkett,* which permits our review of Appellant's ineffectiveness claims.

In *Commonwealth v. Ligons,* 601 Pa. 103, 971 A.2d 1125 (2009), our Supreme Court squarely addressed the question of whether an appellant may challenge PCRA counsel's stewardship for the first time on appeal. Because the Court was evenly split on the issue, *Ligons* is not precedential authority. *See Interest of O.A.,* 552 Pa. 666, 717 A.2d 490, 496 n. 4 (1998) ("While the ultimate order of a plurality opinion, *i.e.* an affirmance or reversal, is binding on the parties in that particular case, legal conclusions and/or reasoning employed by a plurality certainly do not constitute binding authority.").

Several months later, the Supreme Court issued its decision in *Common-*

*wealth v. Pitts*, 603 Pa. 1, 981 A.2d 875, 887 (2009), in which it remarked, in a footnote, that the petitioner waived his challenge to PCRA counsel's ineffectiveness by not raising this claim "prior to his PCRA appeal." *Id.* at 880 n. 4. This statement had no impact on the Court's decision in *Pitts*; indeed, as Justice Baer expressed in his dissenting opinion, the footnoted comment went "far beyond [the] narrow issue" on which the Court granted *allocatur. Id.* at 887 (Baer, J., dissenting opinion).[1] Accordingly, I believe that the footnote in *Pitts* constitutes non-binding *dicta. See Commonwealth v. Perry,* 568 Pa. 499, 798 A.2d 697, 715 (2002) (Castille, J., joined by Newman, J., concurring) (stating prior case law is only binding "with respect to propositions which were actually at issue, and actually decided, in the case. Broad but non-essential 'declarations' are not precedent; ultimately, their inherent wisdom and persuasiveness determine whether they will play any role in future decisions.") (citing *Commonwealth v. Blouse,* 531 Pa. 167, 611 A.2d 1177, 1182 (1992) (Flaherty, J., joined by Zappala and Cappy, JJ., dissenting) (stating although *dicta* may be instructive in predicting direction of court, it is not precedential authority)).

Admittedly, since *Pitts,* our Supreme Court has repeatedly cited *Pitts* in stating that petitioners have waived claims of PCRA counsel's ineffectiveness for failing to raise it below.[2] However, in none of those cases was the waiver issue actually

before the Court or necessary to the Court's decision, as evidenced by the fact that the Court always confined its remarks on waiver to footnotes.[3] As Chief Justice Castille has stated, "[d]icta is not converted into binding constitutional precedent through repetition." *Perry,* 798 A.2d at 715 (citation omitted).

Because our Supreme Court has not issued a precedential decision on this "hotly contested issue," *Pitts,* 981 A.2d at 887 (Baer, J., dissenting opinion), I believe that the binding authority in this area are the decisions of this Court. Where, as here, a PCRA hearing was held and no Pa. R.Crim.P. 907 notice was issued, there are two cases from this Court, *Burkett* and *Ford,* which address whether we may review claims of PCRA counsel's ineffectiveness raised for the first time on appeal. In my opinion, those three-judge panel decisions are irreconcilably conflicting.

First, in *Burkett,* the petitioner filed a *pro se* PCRA petition and, due to delays not relevant to the instant issue, it was not until thirteen years later that counsel was appointed and an amended petition was filed. *Burkett,* 5 A.3d at 1266. The court then held a PCRA hearing, after which it denied relief to the petitioner. *Id.* The petitioner filed a timely appeal, sought to proceed *pro se,* and was granted that request. *Id.* On appeal, he argued for the first time that his PCRA counsel was ineffective. While we acknowledged our Su-

---

**1.** The *Pitts* Court granted *allocatur* to examine whether this Court erred by *sua sponte* evaluating the sufficiency of PCRA counsel's 'no-merit' letter and petition to withdraw under *Commonwealth v. Turner,* 518 Pa. 491, 544 A.2d 927 (1988), and *Commonwealth v. Finley,* 379 Pa.Super. 390, 550 A.2d 213 (1988). *See Pitts,* 942 A.2d at 893.

**2.** *See Commonwealth v. Jette,* 611 Pa. 166, 23 A.3d 1032, 1044 n. 14 (2011); *Commonwealth*

*v. Hill,* 609 Pa. 410, 16 A.3d 484, 497 n. 17 (2011); *Commonwealth v. Colavita,* 606 Pa. 1, 993 A.2d 874, 894 n. 12 (2010).

**3.** I discuss the issues before the Court in *Jette* and *Hill* in more detail, *infra.* As the Majority concedes, in the *Colavita* footnote mentioning waiver, the Court expressly stated that the issue of waiver was not before it. *Colavita,* 993 A.2d at 894 n. 12; Majority Opinion at 26–27, 27. dissent.

preme Court's statement in *Pitts* that the petitioner's failure to respond to the court's Rule 907 notice waived his claims of PCRA counsel's ineffectiveness on appeal, we concluded that *Pitts* was inapplicable because the PCRA court had conducted an evidentiary hearing rather than issuing a Rule 907 notice. *Id.* at 1273. Furthermore, we noted that our Supreme Court specifically addressed this issue in *Ligons,* but reached a non-precedential plurality decision in that case. *Id.* Accordingly, we concluded that the "binding precedent in this area" was this Court's decision in *Commonwealth v. Lauro,* 819 A.2d 100 (Pa.Super.2003), which permitted review of such a claim for the first time on appeal. *Burkett,* 5 A.3d at 1273; *see also Lauro,* 819 A.2d at 109.[4] We then assessed the appellant's claim of PCRA counsel's ineffectiveness in *Burkett,* concluding that it was meritless.[5] *Id.*

Less than two years later, this Court reached the opposite result in *Ford.* There, the defendant filed a *pro se* PCRA petition, counsel was appointed, and, after conducting an evidentiary hearing, the court ultimately denied relief to the petitioner. *Ford,* 44 A.3d at 1193. New counsel was appointed to handle the petitioner's appeal, and in the petitioner's Pa.R.A.P. 1925(b) statement, he argued for the first time that his initial PCRA counsel acted ineffectively. *Id.* at 1194–95. This Court discussed our Supreme Court's plurality decision in *Ligons,* and the Court's statements in *Pitts* and its progeny on the waiver of PCRA counsel ineffectiveness claims. *Id.* at 1195–1198. Moreover, in regard to pertinent decisions by this Court, we acknowledged our conclusion in *Burkett* that *Pitts* did not prohibit review of the ineffectiveness of PCRA counsel claims where no Rule 907 notice had been filed. *Id.* at 1199. However, we did not expressly distinguish *Burkett* or state why it was inapplicable to the circumstances in *Ford.*[6] In-

---

4. In *Lauro,* we explained that "if, on a claim of PCRA ineffectiveness, we determine that there is a reasonable probability that, but for PCRA counsel's act or omission, the result of the PCRA proceeding would have been different, we would be required to remand for a new PCRA hearing." *Burkett,* 5 A.3d at 1273 (citing *Lauro,* 819 A.2d at 109).

5. I acknowledge that due to the timing of our Supreme Court's decision in *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002), it was inapplicable in both *Lauro* and *Burkett.* The same is not true in the present case. However, the *Burkett* panel did not expressly rely on the inapplicability of *Grant* to distinguish *Burkett* from *Pitts.* *See Burkett,* 5 A.3d at 1273. Moreover, while *Grant* abolished the rule set forth in *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977), which *required* IAC claims to be presented at the first opportunity (which often resulted in such claims being raised for the first time on appeal), *Grant* did not expressly *prohibit* appellate courts in this Commonwealth from addressing claims of PCRA counsel's ineffectiveness for the first time on appeal. If it had,

"[t]he issue of whether a PCRA petitioner can raise a claim of PCRA counsel ineffectiveness for the first time after a notice of appeal was filed in post *Grant* petitions" would not have "come to a head in *Ligons* ...." Majority Opinion at 24.

6. The *Ford* panel did indicate that intervening, post-*Burkett* Supreme Court decisions supported our holding in *Ford,* citing concurring and/or dissenting opinions by Justice Saylor in *Commonwealth v. Paddy,* 609 Pa. 272, 15 A.3d 431 (2011) (Saylor, J. concurring and dissenting) ("[A] majority of the [Supreme] Court appears to be suggesting that there effectively can be no state-level redress for such deficient stewardship [of PCRA counsel]."), and *Hill,* 16 A.3d at 498 (Saylor, J. dissenting) (acknowledging "the apparent curtailment of an enforcement mechanism to assure the evenhanded enforcement of a capital post-conviction petitioner's rule-based right to assistance of counsel and the concomitant requirement of effective stewardship"). While I agree that Justice Saylor's comments *suggest* that our Supreme Court wants to preclude review of PCRA counsel ineffectiveness

stead, the *Ford* panel summarily stated that "a majority of the Supreme Court agrees that the issues of PCRA counsel ineffectiveness must be raised in a serial PCRA petition or in response to a notice of dismissal before the PCRA court." *Id.* at 1200. Accordingly, we concluded that we could not review the appellant's claims of PCRA counsel's ineffectiveness because they were raised for the first time after the notice of appeal had been filed. *Id.* at 1201.

I interpret these two decisions as conflicting. In both *Burkett* and *Ford,* an evidentiary hearing was conducted, there was no Rule 907 notice or petition to withdraw filed by counsel, and the petitioner attempted to raise the ineffectiveness of his PCRA counsel at the first opportunity, *i.e.* in his Rule 1925(b) statement or brief to this Court. In *Burkett,* this Court reviewed the petitioner's ineffectiveness claim, while in *Ford* we found it waived.

The Majority reconciles these conflicting decisions by relying on the "intervening case law" of *Jette* and *Hill.* Majority Opinion at 28–29. As with the previously discussed Supreme Court cases mentioning the waiver of PCRA counsel ineffectiveness claims, I conclude that neither *Hill* nor *Jette* constitutes precedential authority on this issue.

First, in *Hill,* after filing an appeal from the denial of Hill's PCRA petition, Hill's counsel failed to file a timely Rule 1925(b) statement. *Hill,* 609 Pa. at 416, 16 A.3d 484. Curiously, it was the Commonwealth that argued on appeal that Hill's PCRA/appellate counsel's failure to file a timely Rule 1925(b) statement amounted to *per se* ineffectiveness. *Id.* at 416–17. Despite the fact that Hill herself did not raise this issue, the Supreme Court remarked in a footnote that even had she done so, "such a claim would not be cognizable in this collateral direct appeal under recent decisions of this Court." *Id.* at 497 n. 17 (citing *Colavita,* 993 A.2d at 893 n. 12; *Pitts,* 981 A.2d at 880 n. 4).[7]

In *Jette,* the Supreme Court addressed the propriety of this Court's *"Battle* procedure" for the handling of *pro se* pleadings filed by a represented appellant.[8] In rejecting this procedure, the Supreme Court found that "address[ing] *pro se* claims of appellate counsel ineffectiveness, while that counsel is still representing the appellant, is in contravention of this Court's long-standing policy that precludes hybrid representation." *Jette,* 23 A.3d at 1036. Thus, the *Jette* Court held that appellate courts cannot consider an appellant's *pro se* assertions of ineffectiveness while the

claims raised for the first time on appeal, neither *Paddy* nor *Hill* (or any other decision by the Supreme Court to date) has expressly held as much. Accordingly, these decisions do not diminish the applicability of *Burkett* to the instant facts, or cure its apparent irreconcilability with *Ford.*

7. Very recently, in *In re L.J.,* —— Pa. ——, 79 A.3d 1073 (2013), our Supreme Court concluded that a footnoted passage in a case by this Court was not precedential for several reasons, including that "the issue was not litigated by the parties" but, instead, our Court had "simply volunteered the discussion." *Id.* at 1081. The same is true of the footnote in *Hill.* The Court acknowledged that

Hill had not raised the issue of PCRA counsel's ineffectiveness but, nevertheless, *volunteered* the comment that even if she had, "such a claim would not be cognizable" under *Colavita* and *Pitts. Hill,* 16 A.3d at 497 n. 17.

8. *See Commonwealth v. Battle,* 879 A.2d 266, 268–69 (Pa.Super.2005) (holding that when a represented appellant files a *pro se* pleading, brief or motion, we forward the document to counsel who is then required to petition this Court for remand, citing the appellant's allegations of ineffectiveness and providing an evaluation of the claims, after which our Court determines if remand for the appointment of new counsel is appropriate).

appellant is still represented by counsel. *Id.* at 1037–40. Instead, the Court directed that "the proper response to any *pro se* pleading is to refer the pleading to counsel, and to take no further action on the *pro se* pleading unless counsel forwards a motion." *Id.* at 1044.

In a footnote at the end of its decision, the *Jette* Court acknowledged the appellant's argument that the Court should assess his *pro se* motion, which alleged claims of PCRA counsel's ineffectiveness, "given [the PCRA's] serial petition and time-bar restrictions." *Id.* at 1044 n. 14. The Court found this argument "contrary to [its] recent jurisprudence," citing the footnotes in *Colavita* and *Pitts.* *Id.* It further explained that "whatever difficulty exists in presenting claims of ineffectiveness of PCRA counsel, it provides insufficient justification for abandoning our longstanding prohibition of hybrid representation." *Id.*

In sum, it is apparent that in *Hill,* the issue of the appellant's ability to challenge her PCRA counsel's stewardship for the first time on appeal was not before the Court, as she had not asserted such a claim. Moreover, while this issue was admittedly related to the appellant's claims in *Jette,* the footnote in that case was not essential to the Court's decision that the *"Battle"* procedure contravened the well-established prohibition against hybrid representation. Accordingly, I view the footnotes in both *Hill* and *Jette* as merely repeating the *dicta* of *Pitts* and its progeny. I do not believe that either footnote constitutes binding authority compelling this Court's contradictory decisions in *Burkett* and *Ford.* Therefore, this *en banc* panel should overrule *Ford* not only because it is inconsistent with our decision in

*Burkett,* but, more importantly, because *Ford* is premised upon the panel's erroneous conclusion that the footnotes in *Pitts, Colavita,* and *Jette* constitute binding authority.[9] Following *Burkett,* which has a similar procedural posture to the instant case, I would review the three claims of PCRA counsel's ineffectiveness that Appellant raises herein.

Finally, I appreciate the Majority's recognition "that failing to address PCRA counsel ineffectiveness claims raised for the first time on appeal renders any effective enforcement of the rule-based right to effective PCRA counsel difficult at the state level." Majority Opinion at 29 (citation omitted). However, I emphasize that in this case, failing to address Appellant's ineffectiveness claims does not merely make it *difficult* for him to raise them at the state level-it makes it *impossible.* Appellant's judgment of sentence became final on or about November 24, 2008. Consequently, he cannot file a timely second PCRA petition asserting his PCRA counsel ineffectiveness claims. Appellant will also be unable to satisfy any exception to the PCRA's one-year time bar by raising such issues. *See Commonwealth v. Morris,* 573 Pa. 157, 822 A.2d 684, 694–95 (2003) (stating that claims of PCRA counsel's ineffectiveness do not save an otherwise untimely PCRA petition). Thus, Appellant will serve the remainder of his life in prison with no state-level opportunity to challenge his PCRA counsel's decision not to raise (or present any evidence to support) the very same claim on which Appellant's codefendant, Jared Lischner, obtained relief and is now serving a sentence of 10 to 20 years. Such inequity demands relief, at least in the form of reviewing

9. *See Commonwealth v. Morris,* 958 A.2d 569, 581 n. 2 (Pa.Super.2008) ("It is well-settled that this Court, sitting *en banc,* may overrule the decision of a three-judge panel of this Court.") (citation omitted).

Appellant's claims herein. Accordingly, I respectfully