**[J-44-2021]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 37 EAP 2020 |
| | : | |
| Appellee | : | Appeal from the Judgment of the |
| | : | Superior Court entered on June 22, |
| | : | 2020 at No. 364 EDA 2019 affirming |
| v. | : | the Order entered on January 16, |
| | : | 2019 in the Court of Common Pleas |
| | : | of Philadelphia County, Criminal |
| AARON BRADLEY, | : | Division, at No. CP-51-CR-0010497- |
| | : | 2012. |
| Appellant | : | |
| | : | SUBMITTED: April 7, 2021 |

**OPINION**

**JUSTICE TODD**                    **DECIDED: October 20, 2021**

In this appeal by allowance, we consider the procedure for enforcing the right to effective counsel in a Post Conviction Relief Act[1] ("PCRA") proceeding. All parties before us acknowledge that the current approach is inadequate, and that revisions are in order, but have offered differing viewpoints. For the reasons that follow, we determine that, indeed, an overhaul of the procedure to vindicate a petitioner's right to effective PCRA counsel is appropriate, and we adopt the approach described within.[2]

---

[1] 42 Pa.C.S. §§ 9541-46.

[2] We acknowledge that our decision today is in the nature of rulemaking, and that the adjudicatory setting for such an exercise is admittedly not always the most optimal. However, we do so "with an eye towards reasonable fairness and the orderly administration of justice," of course, subject to the possibility of future refinements, or the adoption of other alternatives through the rulemaking process. *See Commonwealth v. Holmes*, 79 A.3d 562, 586 (Pa. 2013) (Saylor, J., concurring).

A brief recitation of the facts and procedure underlying this appeal will facilitate an understanding of the issue before us. Appellant Aaron Bradley and Tanaya Nelson were involved in a romantic relationship. In October 2009, Nelson began attending a trade school, where she met Bruce Fox ("Victim"). The relationship between Nelson and Victim was friendly, but evidently, not romantic. On March 26, 2010, the day before Victim's murder, Appellant and Nelson went shopping. Appellant purchased a dresser for Nelson, and then dropped Nelson off at her cousin's house, where Nelson lived. About an hour after arriving at her cousin's house, Nelson realized she had missed approximately ten calls from Appellant. Nelson called Appellant back, and he began to question her about where she was and who she was with. Appellant then proceeded to Nelson's cousin's house, took Nelson's phone, and started to page through Nelson's text messages. Therein, Appellant saw a text from Victim that made him angry. Appellant then left the residence, taking Nelson's cell phone with him. Nelson attempted to call Appellant from her cousin's phone and her cousin's boyfriend's phone, to no avail. Appellant returned Nelson's phone the following morning.

Upon recovering her phone, Nelson received a phone call from Philadelphia police detectives requesting a meeting. Nelson realized that her call and text message logs had been deleted, however, she knew that she herself had not deleted them prior to Appellant taking her phone. The Commonwealth retrieved the deleted call log and text messages through a forensic examination. The examination revealed a number of text messages were sent between Nelson's phone and Victim's phone between 1:07 a.m. and 2:42 a.m. The messages from Nelson's phone requested that Victim pick her up at the location where Victim's murder occurred. Victim's responses indicated that he agreed to do so, and identified himself as being at the intersection where the murder took place. During this same time frame, Philadelphia police responded to a call regarding shots fired at an

intersection in South Philadelphia, and discovered Victim hanging from his vehicle. He had been shot several times, and later died at a local trauma center.

Nelson relayed to police that she did not send or receive any of the recovered texts, that when her phone was returned to her, all these texts had been deleted from her phone, and that she had no animosity towards Victim. On July 9, 2012, Appellant was arrested and charged with first-degree murder, possessing an instrument of crime ("PIC"), and carrying a firearm on a public street in Philadelphia related to his involvement in the shooting death of Victim.

The case proceeded to a jury trial, which commenced on February 19, 2014. On February 26, 2014, the jury found Appellant guilty of all charges. That same day, the trial court sentenced Appellant to a mandatory term of life imprisonment for his conviction of first-degree murder, and concurrent terms of 2½ to 5 years imprisonment for the PIC and firearms offenses. On direct appeal, Appellant was represented by court-appointed counsel, John Belli, Esquire. The Superior Court affirmed Appellant's judgment of sentence in an unpublished decision, authored by then-Judge, now-Justice Mundy, and, thereafter, on December 30, 2015, our Court denied his petition for allocatur review.

On November 23, 2016, Appellant timely filed a *pro se* petition under the PCRA. Although an attorney was appointed to represent Appellant, he was later permitted to withdraw when Appellant privately retained D. Wesley Cornish, Esquire, to litigate his PCRA petition. On June 21, 2017, counsel filed an amended petition, which he titled a Motion for a New Trial, raising a claim of after-discovered evidence. Counsel subsequently filed three supplemental amended petitions raising various claims of trial court error and challenges to trial counsel's effective assistance. On October 5, 2018, the Commonwealth filed a motion to dismiss the PCRA petition, asserting Appellant's claims were meritless, underdeveloped, or previously litigated.

On December 11, 2018, the PCRA court issued notice of its intent to dismiss the petition without conducting an evidentiary hearing pursuant to Pa.R.Crim.P. 907 ("Rule 907"), and, consistent therewith, informed Appellant that he had 20 days to file a response. The form utilized by the PCRA court contained seven options for the court to mark as the reason for dismissal. The PCRA court checked a box indicating that the issues were without merit, but did not provide any further information.

On January 2, 2019, the 22nd day after the court issued its Rule 907 notice – thus, two days outside the response window – counsel filed a motion for extension of time to file a response. The PCRA court did not address that motion, but, rather, on January 16, 2019, entered an order dismissing Appellant's PCRA petition. PCRA counsel filed a timely notice of appeal to the Superior Court.

On March 13, 2019, Appellant's present attorney, Michael Wiseman, Esquire, entered his appearance in the Superior Court. On September 10, 2019, counsel filed a motion which solely requested a remand to the PCRA court so that he could raise allegations of initial PCRA counsel's[3] ineffectiveness for failing to raise several claims concerning both trial and direct appeal counsel's ineffectiveness, and for raising issues in the amended petition which were previously litigated on direct appeal. The Commonwealth did not oppose the remand request.[4]

A three-judge panel of the Superior Court, in an unpublished memorandum opinion, found itself constrained to affirm the PCRA court's order dismissing Appellant's appeal, explaining that he waived his challenge to the adequacy of PCRA counsel's

---

[3] For ease of discussing the enforcement of the right to effective initial PCRA counsel, we shall describe such counsel simply as "PCRA counsel."

[4] On September 30, 2019, the Superior Court entered a *per curiam* order denying the motion without prejudice to Appellant to raise the issue before a merits panel of the court, which is summarized below. *Commonwealth v. Bradley*, 364 EDA 2019 (Pa. Super. Sept. 30, 2019) (order).

effectiveness under current law, and that he could not challenge PCRA counsel's effectiveness on appeal. Judge McCaffery, writing for the Superior Court panel, first noted that it was well-established that petitioners have a rule-based right to the assistance of counsel to litigate their first PCRA petition, citing Pa.R.Crim.P. 904(C) ("[W]hen an unrepresented defendant satisfies the judge that the defendant is unable to afford or otherwise procure counsel, the judge shall appoint counsel to represent the defendant on the defendant's first petition for post-conviction collateral relief."). However, the court explained that, although it was an "imperfect solution" to the dilemma of how to enforce the right to effective PCRA counsel, any challenge asserting ineffective assistance of PCRA counsel was required to be raised within the 20-day response period after receiving a Rule 907 notice; otherwise, such claims were deemed to be waived. Consistent therewith, the Superior Court offered that it was bound by the teachings of our Court's decision in *Commonwealth v. Pitts*, 981 A.2d 875 (Pa. 2009), discussed at greater length, *infra*, and subsequent Superior Court *en banc* decisions in *Commonwealth v. Ford*, 44 A.3d 1190 (Pa. Super. 2012), and *Commonwealth v. Smith*, 121 A.3d 1049 (Pa. Super. 2015), that a petitioner may not raise a claim of PCRA counsel ineffectiveness for the first time on appeal.

After detailing the arguments of Appellant and the Commonwealth in favor of a remand, the Superior Court expressed concern regarding the current process for preserving claims of ineffective assistance of PCRA counsel. The panel suggested that, particularly in situations in which counsel does not seek to withdraw from representation, the current waiver rule was flawed. According to the court, this was because the PCRA's time limitations made it difficult, if not impossible, to seek relief from an ineffective PCRA attorney in a subsequent petition. While the Superior Court recognized that Appellant was requesting a remand of the ineffectiveness claims, rather than asking the court to

review them in the first instance, it determined this to be a distinction without a difference. Acknowledging that it was constrained by its prior *en banc* decisions, the Superior Court nevertheless urged our Court's rules committees to consider amending the rules regarding PCRA motion's practice to provide a better opportunity to raise claims of PCRA counsel's ineffectiveness. Thus, the Superior Court affirmed the PCRA court's order dismissing Appellant's PCRA petition.

We granted allocatur to consider whether the current process for the enforcement of the right to effective counsel in a first PCRA proceeding is adequate, and if not, whether another process is appropriate. *See Commonwealth v. Bradley*, 241 A.3d 1091 (Pa. 2020) (order).[5]

Prior to considering the arguments of the parties, it is beneficial to set forth a brief overview of the presently recognized procedure by which a PCRA petitioner must preserve a claim of PCRA counsel's ineffectiveness. Under current case law, which has been generally accepted by our Court and the Superior Court, the questionable binding nature and validity of which is discussed in detail below, the sole method by which a petitioner can challenge the ineffectiveness of his PCRA counsel is through the filing of a response to the PCRA court's Rule 907 dismissal notice. Rule 907 provides in relevant part that, after the court has given notice to the parties of its intention to dismiss the PCRA petition and its reasons therefor, the petitioner "may respond to the proposed dismissal within 20 days of the date of the notice. The judge thereafter shall order the petition dismissed, grant leave to file an amended petition, or direct that the proceedings continue." Pa.R.Crim.P. 907(1). Thus, upon the receipt of PCRA court's Rule 907 notice

---

[5] As this issue raises a pure question of law, our standard of review is *de novo*, and our scope of review is plenary. *Buffalo Township v. Jones*, 813 A.2d 659, 665 n.4 (Pa. 2003). Furthermore, we engage in resolution of this issue pursuant to our authority to prescribe procedures by which the laws are enforced. Pa. Const. art. V, § 10(c); *In re Estate of Easterday*, 209 A.3d 331, 340-41 (Pa. 2019).

of its intent to dismiss the PCRA petition, it is incumbent upon a petitioner to raise a claim of PCRA counsel's ineffectiveness before the PCRA court, and to do so within the 20-day response period. Our Court first invoked Rule 907 as the means by which a petitioner must challenge PCRA counsel's effectiveness in our 2009 decision in *Commonwealth v. Pitts*, *supra*. In two footnotes, we determined that the failure to raise PCRA counsel's ineffectiveness in response to the PCRA court's Rule 907 notice resulted in a waiver of such claims, as a petitioner could not raise PCRA counsel's ineffectiveness for the first time on appeal because it constituted a prohibited serial PCRA petition. Thus, Rule 907 provides the currently accepted, and only, procedure by which a petitioner may raise and preserve claims of PCRA counsel's ineffectiveness.

Appellant first offers that his representation was marred by multiple instances of the ineffectiveness of trial counsel, direct appeal counsel, and PCRA counsel. Appellant outlines the various issues on which he contends he is entitled to review. These include trial counsel's failure to present an alibi witness and expert testimony; trial counsel's failure to seek access to Nelson's mental health records; trial counsel's failure to object to the use of Appellant's juvenile simple assault conviction; and direct appeal counsel's failure to raise these meritorious claims. Furthermore, Appellant asserts that PCRA counsel was ineffective for failing to follow established procedure for the presentation of certain claims, failing to present meritorious claims, and presenting previously litigated claims to the court, thereby allowing the PCRA court to dismiss his claims without review.

Appellant then stresses the importance of an initial PCRA petition and the effective assistance of PCRA counsel. He explains that, currently, it is only through a response to the PCRA court's Rule 907 notice of intent to dismiss that a petitioner may challenge PCRA counsel's ineffectiveness, as a petitioner may not raise PCRA counsel's ineffectiveness for the first time on appeal. Furthermore, Appellant reminds that a second

PCRA petition may not be filed raising such claims due to the PCRA's statutory one-year time bar. Appellant maintains that the current Rule 907 procedure is not adequate to vindicate a petitioner's right to adequate performance by PCRA counsel.

Specifically, Appellant submits that preserving a claim of ineffectiveness is the responsibility of the allegedly ineffective PCRA lawyer, which creates an inherent conflict of interest by requiring counsel to raise his own ineffectiveness, which, in turn, threatens counsel's professional reputation and livelihood. According to Appellant, counsel's failure to file a Rule 907 response alleging his own ineffectiveness cannot reasonably be held to constitute waiver. Indeed, to avoid waiver in such circumstances, Appellant observes that a petitioner is essentially required to act *pro se*. Moreover, Appellant contends that the *pro se* petitioner would have to recognize his own PCRA counsel's ineffectiveness and understand that, to preserve any ineffectiveness claim, he would have to file a Rule 907 response raising the claim. Related thereto, Appellant points out that there is nothing in the language of Rule 907 that would notify a lawyer, let alone a *pro se* petitioner, that Rule 907 is the mechanism by which to challenge PCRA counsel's performance.

Appellant also rejects the notion that a petitioner could obtain new PCRA counsel to file a 907 response, as doing so would require the petitioner to discern the ineffectiveness of PCRA counsel; be aware of the Rule 907 mechanism for raising ineffectiveness claims; and secure new counsel, all within Rule 907's 20-day response period. Moreover, even if a petitioner were able to obtain new counsel, Appellant offers that new counsel would have to review the entire record, and file a response, in the remainder of the same 20-day period.

Finally, Appellant contends that, even accepting this approach, a PCRA court's Rule 907 notice is often nothing more than a form, with a checked box stating merely that the issues raised by PCRA counsel were "without merit." PCRA Court's Notice Pursuant

to Pennsylvania Rule of Criminal Procedure 907, 12/11/18. In Appellant's view, such a bald statement is insufficient and fails to provide adequate grounds on which to base a response. Appellant claims that it would be a challenge for a seasoned attorney to understand a PCRA court's reasons for dismissal, let alone a *pro se* petitioner. In sum, Appellant asserts that Rule 907 is an inadequate vehicle for vindicating the important right to effective PCRA counsel, highlighting the reasoning expressed by then-Justice, now-Chief Justice, Baer, in his dissenting opinion in *Pitts*, discussed below, joined by Justice Saylor and this author.

To remedy this process, Appellant offers that, at a minimum, the failure to file a Rule 907 response should not be deemed to constitute a waiver of the claim. Appellant observes that the *Pitts* dissenters suggested framing a challenge to PCRA counsel's ineffectiveness as one of layered ineffectiveness – that is, on appeal from the denial of PCRA relief, a petitioner would raise a layered claim of PCRA counsel's ineffectiveness. Thus, according to Appellant, if the *Pitts* dissenters' remedy is embraced, a petitioner who presents a claim of PCRA counsel ineffectiveness should be entitled to the appointment of new counsel on appeal, who may raise the ineffectiveness of prior counsel. Appellant argues, however, that this would not be a workable remedy for an indigent prisoner, as PCRA appointments remain in place through appeal. For a petitioner who retains the same counsel for the PCRA hearing and on PCRA appeal, Appellant proposes that such a petitioner be permitted to file a second PCRA petition raising claims of ineffective PCRA counsel at the time he or she engaged new counsel. Appellant believes this could be accomplished by invoking the PCRA's "new fact" exception to the one-year time bar, and, thus, construing PCRA counsel's ineffectiveness as a "new fact" allowing for the filing of a new PCRA petition. *See* 42 Pa.C.S. § 9545(b)(1)(ii).

*Amicus curiae*, the Pennsylvania Innocence Project, emphasizes much of Appellant's argument, including the insufficiency of the current framework for challenging ineffective post-conviction counsel. *Amicus*, like Appellant, urges our Court to allow a first-time PCRA petitioner to raise claims of ineffectiveness of counsel in a subsequent PCRA petition, overcoming the PCRA's time bar by holding that a petitioner's discovery of PCRA counsel's ineffectiveness constitutes new information that was unknown at the time of trial, triggering the PCRA's "new facts" exception. *See id.* Alternatively, *amicus* suggests we apply the prior *Hubbard* rule[6] in these limited circumstances, allowing a petitioner to raise an ineffectiveness claim at the first opportunity when represented by new counsel.

*Amici* Defender Association of Philadelphia and the Pennsylvania Association of Criminal Defense Lawyers also emphasize the importance of PCRA counsel's effective representation and the shortcomings of the current *Pitts* waiver rule and the Rule 907 process, contending that such procedures violate due process, as they are fundamentally unfair. *Amici* propose a process by which claims of PCRA counsel's ineffectiveness may be raised through optional responses under Rule 907, with the discretionary appointment of new PCRA counsel, when appropriate, by the PCRA court, as well as permitting PCRA counsel ineffectiveness claims to be raised on appeal in the appellate court, with the court retaining the discretion to remand to the PCRA court for development of the claims.

The Commonwealth, by the District Attorney of Philadelphia, as Appellee, sets forth a position largely in alignment with Appellant. Specifically, the Commonwealth, like Appellant, believes that the current process for asserting claims of PCRA counsel's ineffectiveness provides no practical opportunity for relief, and is problematic. For its part,

---

[6] *See Commonwealth v. Hubbard*, 372 A.2d 687 (Pa. 1977) (requiring defendant to raise ineffective assistance of counsel claims at first opportunity, *i.e.*, upon representation by new counsel). *Hubbard* is discussed further below.

the Commonwealth advocates that a petitioner should be able to assert ineffectiveness claims at the first opportunity, *i.e.*, when the allegedly ineffective counsel no longer represents petitioner, including on appeal, with the possibility of a remand to the PCRA court for development of the record and to address new claims of PCRA counsel's ineffectiveness in the first instance.

The Office of the Attorney General also filed an *amicus* brief, in which it eschews an *ad hoc* approach to litigating claims that PCRA counsel was ineffective, and suggests that our Court direct the criminal and appellate rules committees to draft rules necessary to provide for such a process. *Amicus* emphasizes that the committee members represent all aspects of the criminal justice system, and their proposals are subject to public notice and comment. *Amicus* then offers the "simple and optimal" solution of providing a petitioner the opportunity to challenge PCRA counsel's ineffectiveness with new counsel, while the case is still pending before the PCRA judge, and before final disposition of the petition. *Amicus* Office of the Attorney General Brief at 2. According to *amicus*, this PCRA court-focused approach would promote efficiency and simplicity compared to additional layers of review. Specifically, *amicus* points out that the appointment of new PCRA counsel in the proceedings before the PCRA court would allow ineffectiveness claims to be raised at the earliest point in time, obviate the need for appellate remand or the filing of a second PCRA petition, and accomplish these goals without conflicting with the PCRA or prior decisions.

Finally, *Amicus* Pennsylvania District Attorneys Association likewise urges rulemaking, which would balance a petitioner's need for effective representation with the societal need for finality, and promote merits consideration of PCRA counsel's effectiveness by state tribunals, rather than ceding such consideration to federal courts on federal *habeas* review. Like the Office of the Attorney General, the Pennsylvania

District Attorneys Association favors an approach that provides new PCRA counsel prior to the PCRA court's final disposition of the petition.

A meaningful and efficient procedure to protect and enforce a PCRA petitioner's right to effective assistance of counsel on collateral review has been elusive. Our Court, in various decisions, has struggled with balancing the right to effective PCRA counsel with the mandates of the PCRA, while providing a workable system with finality. To aid in assessing these competing considerations, we briefly trace the evolution of the collateral review process in Pennsylvania, as well as analyze the current process by which a petitioner may vindicate his right to effective PCRA counsel.

Prior to the mid-1960s, there was no overarching system in Pennsylvania for a defendant to collaterally attack a conviction by claiming ineffective assistance of counsel or to allege violations of a defendant's constitutional rights. In this period, collateral relief was limited to the filing of a writ of *habeas corpus* and, to a lesser extent, a writ of *coram nobis*. Increases in the volume of post-conviction challenges, as well as the lack of a uniform process to hear and decide such claims, led our Court to call for legislation to address post-conviction litigation. In 1966, the Pennsylvania legislature responded by enacting the Post Conviction Hearing Act ("PCHA").[7] The PCHA encompassed *habeas corpus* and *coram nobis* relief and provided a comprehensive procedure to hear and determine broad challenges to convictions obtained, and sentences imposed, "without due process of law."[8] More specifically, the denial of a defendant's "constitutional right to representation by competent counsel" constituted a basis for relief under the PCHA.[9]

---

[7] Act of Jan. 25, 1966, P.L. 1580 (1965), No. 554, 19 P.S. §§ 1180-1 *et seq.*, recodified as amended at 42 Pa.C.S. §§ 9541-9551 (1982). Sections 9547-9551 of the PCHA were repealed in 1988. Act of Apr. 13, 1988, P.L. 336, No. 47.

[8] 42 Pa.C.S. § 9542 (repealed 1988).

[9] 42 Pa.C.S. § 9543(3)(vi) (repealed 1988).

Shortly after the enactment of the PCHA, our Court implicitly recognized not only the right to counsel, but for purposes of collateral review, the right to effective representation. *See Commonwealth v. Mitchell*, 235 A.2d 148, 149 (Pa. 1967) ("Counsel's ability to frame the issues in a legally meaningful fashion insures the trial court that all relevant considerations will be brought to its attention."). Subsequently, a rule-based right to collateral review counsel was recognized. *See Commonwealth v. Adams*, 350 A.2d 820, 821 (Pa. 1976) (recognizing that former Pa.R.Crim.P. 1503(a), suspending in part and superseding Section 12 of the PCHA, placed an affirmative duty on the PCHA court to appoint counsel for an indigent petitioner).

In 1988, the legislature amended the PCHA and renamed it the "Post Conviction Relief Act," which is commonly referred to as the PCRA. The PCRA began a narrowing trend, restricting the grounds upon which a defendant could obtain post-conviction relief by limiting such relief to individuals convicted of crimes they did not commit or who were serving an illegal sentence. A defendant seeking relief under the PCRA was required to establish by a preponderance of the evidence that he was in custody, that his conviction or sentence resulted from one or more of the PCRA's specifically enumerated errors or defects, and that the error or defect that he was alleging had not been waived or previously litigated. Significantly, for our purposes today, in 1995, the legislature further limited relief under the PCRA by requiring that, subject to three narrow exceptions, a post-conviction petition was required to be filed within one year of the date that the defendant's judgment became final. Indeed, our Court has interpreted the PCRA's one-year filing requirement as jurisdictional in nature. *See Commonwealth v. Fahy*, 737 A.2d 214 (Pa. 1999); *Commonwealth v. Peterkin*, 722 A.2d 638 (Pa. 1998); *see generally* Thomas M. Place, *Ineffective Assistance of Counsel Under the Pennsylvania Post Conviction Relief Act*, 69 Temp. L. Rev. 1389, 1389-90 (1996).

Under the PCRA, ineffective assistance of counsel is one of the enumerated errors entitling a defendant to relief so long as the other conditions of the PCRA are met. However, in contrast to the general language of the PCHA noted above, under the PCRA, a petitioner is eligible for relief only where his counsel's act or omission so undermined the truth-determining process such that no reliable adjudication of guilt or innocence could have taken place.[10]  Our Court set the standard for evaluating claims of ineffectiveness raised on direct appeal in *Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001). Consistent with the standard articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), a federal *habeas corpus* case, the *Pierce* court determined that a defendant claiming ineffectiveness of counsel had to establish both inadequate performance and prejudice in order to obtain relief.  Under the *Pierce/Strickland* test, a court evaluates an ineffectiveness claim pursuant to a three-prong performance and prejudice standard.  A defendant must establish that the issue underlying the claim of ineffectiveness has arguable merit, that defense counsel's act or omission was not reasonably designed to advance the interests of the defendant, and that the defendant was prejudiced – that is, but for counsel's errors, the outcome of the proceeding would have been different.  *Pierce*, 786 A.2d at 213.

As to the procedure for raising a challenge to counsel's effective representation, at the time of the passage of the PCRA, claims of ineffective assistance of counsel were required to be raised at the first opportunity, that is, whenever new counsel began representation.  Thus, with respect to collateral review, claims of ineffectiveness not only

---

[10] Our Court, however, has construed this statutory requirement more broadly to channel a wider range of claims into the PCRA's jurisdictional and procedural framework.  Thus, although not directly relevant here, prejudice need not be demonstrated in some circumstances — such as where counsel unjustifiably failed to file a requested direct appeal — as reflected in *Commonwealth v. Lantzy*, 736 A.2d 564 (Pa. 1999), and its progeny.

could be set forth for the first time on appeal, they were *required* to be raised once the petitioner was represented by new counsel. *See Hubbard*, 372 A.2d at 695 n.6. Claims raised for the first time on appeal were not considered to be second or serial petitions, and, thus, the PCRA's time limitation period was not violated by these claims. *Commonwealth v. Pursell*, 724 A.2d 293, 302 (Pa. 1999). The rule announced in *Hubbard* was the prevailing law at the time of the PCRA's passage in 1988, as well as when it was amended in 1995.

In 2002, however, our Court in *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002), significantly restructured review of ineffective assistance of counsel claims by rejecting the long-standing *Hubbard* rule that claims of ineffectiveness had to be raised at the first opportunity, even if that was on direct appeal and the issue had not been presented to the trial court. Under the newly-minted *Grant* rule, generally speaking, claims of ineffectiveness may no longer be entertained on direct appeal, even if a defendant procures new counsel; rather, they are deferred to the post-conviction review process. *Grant*, 813 A.2d at 738 (a defendant "should wait to raise claims of ineffective assistance of trial counsel until collateral review."). Our *Grant* decision, however, did not address the issue of raising claims of PCRA counsel's ineffectiveness for the first time on appeal. *See generally* Thomas M. Place, *The Pennsylvania Post Conviction Relief Act-Recent Developments*, 89 Pa. B.A. Q. 178, 193-94 (2018).

Thus, in general, the PCRA stands as the sole means of raising collateral challenges and of obtaining relief at the state level. More specifically, the PCRA has been interpreted as channeling claims for post-conviction relief through the PCRA, creating a unified framework for reviewing claims that were traditionally cognizable in state *habeas corpus*, including the mandate that all ineffectiveness claims must be filed on collateral review, and within one year from the date of a defendant's conviction. This jurisdictional

time limitation, as well as the inability to file a new petition while a prior petition was pending, *see Commonwealth v. Lark*, 746 A.2d 585, 588 (Pa. 2000), in turn, has created a collateral review process under which a petitioner will be able, as a practical matter, to file only a single, counseled petition for relief, *Commonwealth v. Williams*, 782 A.2d 517, 524 (Pa. 2001). While raising claims of trial counsel's ineffectiveness is straightforward, and, broadly speaking, such claims are to be presented in a defendant's PCRA petition, the question of how to raise a claim of PCRA counsel's ineffectiveness has proven to be vexing.

Significantly, a petitioner has a rule-based right to the appointment of counsel for a first PCRA petition. *See* Pa.R.Crim.P. 904. Pursuant to our procedural rule, not only does a PCRA petitioner have the right to counsel, but he is also entitled to the effective assistance of counsel. *See Commonwealth v. Albert*, 561 A.2d 736, 738 (Pa. 1989) (holding that rule-based right to counsel in a PCRA proceeding embodies the "concomitant right to effective assistance of counsel" in the PCRA court); *see also Commonwealth v. Albrecht*, 720 A.2d 693, 699-700 (Pa. 1998) (appointment of counsel pursuant to [Pa.R.Crim.P. 904] carries with it an "enforceable right to effective post-conviction counsel"). The guidance and representation of an attorney during collateral review ensures that meritorious legal issues are recognized and addressed, and that meritless claims are abandoned.

While a PCRA petitioner enjoys this rule-based right to effective assistance of counsel, our Court has acknowledged that "there is no formal mechanism in the PCRA for a second round of collateral attack focusing upon the performance of PCRA counsel, much less is there a formal mechanism designed to specifically capture claims of trial counsel ineffectiveness defaulted by initial-review PCRA counsel." *Commonwealth v. Holmes*, 79 A.3d 562, 583-84 (Pa. 2013). Notwithstanding the absence of a "formal

mechanism" to challenge the effectiveness of PCRA counsel, our Court has found that a petitioner nevertheless may raise a claim of PCRA counsel's ineffectiveness. As noted above, our Court first embraced the notion that claims of ineffective assistance of counsel had to be raised by new counsel at the first opportunity, even if that first opportunity was direct appeal. *See Hubbard, supra.* This included assertions of PCRA counsel's ineffectiveness. *See Pursell, supra.* However, with the advent of *Grant*, and its mandate that ineffectiveness claims be raised on collateral review, coupled with the general prohibition on raising new claims on appeal, *see* Pa.R.A.P. 302, our Court has "struggled with the question of how to enforce the 'enforceable' right to effective PCRA counsel." *Holmes*, 79 A.3d at 584.

Subsequent to *Grant*, then-Justice, later Chief Justice, Castille outlined his views on the review of claims of PCRA counsel's ineffectiveness on appeal in a series of decisions involving pre-*Grant* PCRA petitions, which were subject to the previous *Hubbard* approach. According to Justice Castille, appellate review of PCRA counsel's ineffectiveness on appeal was contrary to the PCRA itself. Specifically, he maintained that presenting new claims of PCRA counsel ineffectiveness undermined the PCRA's one-year time limitation and that allowing appellate courts to reach such claims rendered them a second PCRA petition, in tension with their traditional appellate role. Moreover, Justice Castille considered such review to be an evasion of the prohibition on serial post-conviction petitions. Instead, in his view, claims that were not raised in an initial or amended PCRA petition should be brought in a second PCRA petition, subject to the time limitation and serial petition bar found in 42 Pa.C.S. § 9545(b). *See Commonwealth v. Hall*, 872 A.2d 1177 (Pa. 2005) (Castille, J., concurring); *Commonwealth v. Jones*, 815 A.2d 598, 608-10 (Pa. 2002) (OAJC); *Commonwealth v. Moore*, 805 A.2d 1212, 1220 (Pa. 2002) (Castille, J., concurring and dissenting).

We first addressed whether and how claims of PCRA counsel's ineffectiveness could be raised on appeal in *Commonwealth v. Ligons*, 971 A.2d 1125 (Pa. 2009) (plurality). The question before the Court was whether claims of capital PCRA counsel effectiveness could be addressed when they were not raised in a PCRA petition.[11] Ultimately, the Justices were equally divided on this question. After exhausting his direct appeal rights, Ligons filed a *pro se* PCRA petition, and, ultimately, after the appointment of counsel and the filing of an amended petition, the PCRA court denied guilt-phase relief, but granted a new penalty hearing. Ligons then submitted a *pro se* motion requesting new counsel and sought to raise a jury selection issue that had not been raised before the PCRA court. The PCRA court declined to appoint new counsel, but permitted previously-appointed counsel to raise the new claim. Thereafter, new counsel, the Defender Association of Philadelphia, Federal Court Division, Capital Habeas Corpus Unit ("Federal Defender"), entered its appearance, and, after the PCRA court denied relief on the merits, filed a timely notice of appeal. On appeal, the Federal Defender raised numerous issues related to the effectiveness of PCRA counsel not presented below.

In the lead opinion, then-Justice, now-Chief Justice, Baer, joined by Justice Saylor and this author, initially noted that a petitioner in a capital case may challenge the effectiveness of PCRA counsel for the first time on appeal to the Supreme Court,[12] even when such claims were not raised in a PCRA petition, as it was his only opportunity to do

---

[11] Antoine Ligons's direct appeal concluded prior to the Court's decision in *Grant*, and, thus, the Court analyzed his ineffectiveness claims under the pre-*Grant* framework.

[12] A defendant sentenced to death is entitled to automatic direct review by our Court. 42 Pa.C.S. § 9711(h)(1) ("A sentence of death shall be subject to automatic review by the Supreme Court of Pennsylvania pursuant to its rules."). Likewise, a PCRA court's denial of relief to a capital petitioner entitles him to direct review by our Court. 42 Pa.C.S. § 9546(d) ("A final court order under this subchapter in a case in which the death penalty has been imposed shall be directly appealable only to the Supreme Court pursuant to its rules.").

so, citing *Hall, supra*. *Ligons*, 971 A.2d at 1138. The lead opinion proceeded to address then-Chief Justice Castille's concurring opinion with respect to the cognizability of appellate review of such claims. The plurality emphasized the importance of the rule-based right to effective assistance of PCRA counsel and the practical realities of an approach recognizing that right. According to the plurality, a petitioner would not be able to pursue a claim of PCRA counsel's ineffectiveness during an initial PCRA proceeding as that proceeding would not be final. Furthermore, the one-year time bar would prevent a petitioner from upholding his right to effective PCRA counsel in a timely petition, as it would be impossible to file a serial petition given that a petitioner's first PCRA petition would not be disposed of before the expiration of the one-year time limitation. Thus, declining to allow review of claims of PCRA counsel's ineffectiveness advanced on appeal would render "a PCRA petitioner's right to effective representation unenforceable and, therefore, meaningless." *Id.* at 1139. According to the plurality, the only way to afford a PCRA petitioner an opportunity to enforce his right to effective PCRA trial counsel was to permit the raising of such claims on appeal from the denial of PCRA relief. *Id.* at 1140.

Chief Justice Castille's concurring opinion, joined by Justices Eakin and McCaffery, rejected *in toto* the notion that a petition may advance new claims of PCRA counsel's ineffectiveness on appeal.[13] According to Chief Justice Castille, allowing review of such claims for the first time on appeal to vindicate claims of PCRA counsel's ineffectiveness, taken to its logical conclusion, would afford a petitioner an ability to litigate serial PCRA petitions *ad infinitum.* For the Chief Justice, reviewing claims of PCRA counsel's ineffectiveness, when raised for the first time on appeal, also flouted the PCRA waiver and jurisdictional provisions. Specifically, the concurrence believed that a claim

---

[13] These Justices were in a concurring position, as the plurality concluded that all of Ligons's claims were without merit.

of PCRA counsel ineffectiveness constituted a "new" claim, as it was not raised in an initial or amended petition; rather, according to the concurrence, it needed to be raised in a serial PCRA petition. Such serial petitions, however, would be subject to the one-year jurisdictional time limitations. Indeed, Chief Justice Castille maintained that reviewing such claims on appeal raised "separation of powers concerns to the extent it dismisses the PCRA's express jurisdictional and serial petition limitations." *Id.* at 1159 (Castille, C.J., concurring).

Furthermore, the concurrence warned of the danger of entertaining claims of PCRA counsel's ineffectiveness on appeal as negating judicial issue preservation principles set forth in Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Related thereto, the Chief Justice contended that reviewing claims of PCRA counsel ineffectiveness, when they are not examined by the PCRA court, results in the appellate court acting "not as a reviewing court, but as a trial court passing upon claims that amount to a serial PCRA petition that was not filed within the one-year jurisdictional limitations period mandated by the PCRA." *Id.* at 1161.

Underlying Chief Justice Castille's view was his conclusion that there is no constitutional right to PCRA counsel and that the rule-based right to effective assistance of PCRA counsel does not require the same exacting standards afforded to individuals with a Sixth Amendment constitutional right to counsel; it was also based on perceived abuses by the Federal Defenders in delaying the collateral review process. *Id.* at 1167-69. The Chief Justice, nonetheless, acknowledged that some means of protecting the rule-based right to effective assistance of counsel in capital cases was required. Thus, he offered that proper informal supervision by the PCRA courts would ensure that capital counsel appropriately discharge their duties.

In response, Justice Baer acknowledged the theoretical appeal of Chief Justice Castille's view. However, Justice Baer stressed that the Chief Justice's approach, as a practical matter, placed a petitioner in an untenable situation, as the concurrence's conceptual considerations left a petitioner without an enforceable right to effective representation, contrary to our Court's controlling precedent. By way of illustration, the plurality noted that a petitioner could never abide by Pa.R.A.P. 302(a) when challenging PCRA counsel's performance because the first opportunity to raise such a claim was in an appeal from the PCRA court's denial of relief. Thus, a petitioner could not challenge PCRA counsel's effectiveness before the PCRA court because the alleged ineffectiveness was "playing out as that proceeding occurs, and ineffectiveness cannot be identified until the proceeding has concluded." *Ligons*, 971 A.2d at 1139. Moreover, Justice Baer reiterated that, due to the one-year filing requirement, it would be virtually impossible for a petitioner to ever file a serial petition raising PCRA counsel's ineffectiveness in a timely manner, as his first PCRA petition would not be disposed of before the one-year statutory filing period expires. Thus, while acknowledging the fact that our Court would be reviewing claims that were not previously reviewed by the PCRA court, and that such an approach was not ideal, according to the plurality, the only way to afford a capital PCRA petitioner an opportunity to enforce his right to effective PCRA trial counsel was to permit the filing of such claims on appeal from the denial of PCRA relief.

Justice Saylor authored a concurring and dissenting opinion in which he, *inter alia*, acknowledged Chief Justice Castille's concern over abuse of the PCRA process. He believed, however, that as long as the Court's jurisdiction was secure, the Justices were authorized to consider challenges to the fundamental fairness of PCRA proceedings, either through the Court's own immediate review or a remand if factual controversies existed. Thus, Justice Saylor would have vacated the award of penalty relief and

remanded the matter to the PCRA court for additional proceedings, including the consideration of whether leave should be granted to amend the pleadings to raise claims of deficient stewardship on the part of post-conviction counsel. *Id.* at 1173 (Saylor, J., concurring and dissenting); *see* Pa.R.Crim.P. 905(A) ("The judge may grant leave to amend or withdraw a petition for post-conviction collateral relief at any time. Amendment shall be freely allowed to achieve substantial justice.").

A mere five months later, our Court again considered the process by which a PCRA petitioner could challenge PCRA counsel's effectiveness in *Pitts, supra.* In *Pitts*, Dexter Pitts pled guilty to simple assault and ten counts of burglary. After exhausting his direct appeal rights, Pitts filed a *pro se* petition for post-conviction relief. Pitts was appointed PCRA counsel, but counsel did not file an amended petition; instead, counsel filed a *Turner/Finley* no-merit letter.[14] The PCRA court dismissed the petition; however, on appeal, the Superior Court found that PCRA counsel did not explore whether plea counsel was ineffective for failing to raise other challenges to the discretionary aspects of sentence. The Superior Court determined, *inter alia*, that PCRA counsel had not complied with the *Turner/Finley* withdrawal requirements because, although the no-merit letter indicated Pitts's dissatisfaction with the length of his sentence, it failed to explain why Pitts could not obtain relief on this claim. Thus, the Superior Court vacated the PCRA court's order and remanded for the filing of an amended PCRA petition raising various potential claims. Our Court granted allowance of appeal "to determine whether the Superior Court erred in creating new *Turner/Finley* requirements, *sua sponte,* by finding

---

[14] When counsel concludes that a PCRA petitioner has no viable issues, counsel is required to submit a letter to the PCRA court explaining the basis for his no-merit conclusion. This is commonly known as a *Turner/Finley* letter. *Commonwealth v. Turner*, 544 A.2d 927, 928-29 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988). If the court agrees, counsel is permitted to withdraw, and the petitioner may proceed *pro se* or obtain private counsel. *Turner*, 544 A.2d at 929.

PCRA counsel's no-merit letter defective for failing to address issues Pitts never raised, and which were not apparent from the record." *Pitts*, 981 A.2d at 878. As to this issue, our Court ultimately concluded that the Superior Court erred in determining that PCRA counsel failed to satisfy the requirements of *Turner/Finley*. However, in two footnotes, the Court also spoke to the procedure by which a petitioner could challenge PCRA counsel's ineffectiveness, setting forth alternative grounds for reversal.

The *Pitts* majority first suggested that Pitts's failure to respond to the PCRA court's Rule 907 notice resulted in waiver of any PCRA counsel ineffectiveness claims:

> The Commonwealth asserts Pitts waived any issue pertaining to the adequacy of PCRA counsel's no-merit letter by failing to raise it during Rule 907's 20-day response period. We agree, finding Pitts's failure to challenge PCRA counsel's withdrawal upon his receipt of counsel's no-merit letter or within the 20-day period telling.

*Pitts*, 981 A.2d at 879 n.3. We reaffirmed that conclusion in a second footnote, concluding that raising an issue of ineffective assistance of counsel on appeal constituted a prohibited serial PCRA petition:

> Furthermore, Pitts's failure, prior to his PCRA appeal, to argue PCRA counsel's ineffectiveness for not raising the direct appeal issue results in waiver of the issue of PCRA counsel's ineffectiveness. Pitts's attempt to obtain review, on collateral appeal, of an issue not raised in the proceedings below amounts to a serial PCRA petition on PCRA appeal. Although Pitts asserts his PCRA appeal was the first opportunity he had to challenge PCRA counsel's stewardship because he was no longer represented by PCRA counsel, he could have challenged PCRA counsel's stewardship after receiving counsel's withdrawal letter and the notice of the PCRA court's intent to dismiss his petition pursuant to Pa.R.Crim.P. 907, yet he failed to do so. Thus, the issue of whether PCRA counsel was ineffective for failing to raise the direct appeal issue was waived, and the Superior Court should not have reached it.

*Id.* at 880 n.4.

While this was as far as the majority went in terms of an analysis of the procedure for raising claims of PCRA counsel ineffectiveness, Chief Justice Castille authored a joining concurring opinion, reiterating his position in *Ligons*, as well as defending the Rule 907 procedure. The Chief Justice, noting that the majority only discussed the issue "in passing," but that it was of "serious import" and the point of a recent division of the Court, *id.* at 883 (Castille, C.J., concurring), again offered his view that claims of ineffective assistance of PCRA counsel could not be raised for the first time on appeal as violative of Pa.R.A.P. 302's mandate that claims be raised in the first instance at the trial level, as well as his position that any amendment to a PCRA petition would constitute a serial petition subject to the PCRA's one-year time bar. While expressing a sentiment that a safeguard was required to realize an enforceable right to effective PCRA counsel, the concurrence found that such right could not be vindicated by the creation of an extra-statutory, "as-of-right" ability to litigate a new, unlimited, and essentially serial PCRA petition on PCRA appeal. *Pitts*, 981 A.2d at 884 (Castille, C.J., concurring). In doing so, Chief Justice Castille pointed to the arbitrariness of the ability of some petitioners with new counsel to raise collateral issues, but not all petitioners. In the Chief Justice's view, the answer was not to permit consideration of such ineffective assistance claims, but to look to the General Assembly to amend the PCRA to allow all PCRA petitioners to pursue a second round of PCRA petitions. According to Chief Justice Castille, however, the legislature had not so acted, and, thus, legislative judgment has been made as to what types of claims should be available at all on collateral review.

Then-Justice Baer, again joined by Justice Saylor and this author, challenged the Rule 907 procedure, initially offering that the majority went "far beyond this narrow issue, which was the sole subject of our grant of allocatur." *Id.* at 887 (Baer, J., dissenting). Justice Baer continued, disputing the majority's finding of waiver, as Pitts's claim was

properly layered and raised at the first opportunity to do so on collateral review. He stressed that a response to the Rule 907 notice to dismiss was optional, and that the Rule did not suggest that a failure to respond to the notice resulted in the waiver of any ineffectiveness claims. Consistent with his practical approach to recognizing the right to effective PCRA counsel, Justice Baer noted that a PCRA petitioner could never demonstrate that he was prejudiced by PCRA counsel's performance, as the PCRA proceeding had not yet been concluded and no ruling by the PCRA court would have been issued. *Id.* at 891. Finding no viable alternative for enforcing the right to effective PCRA counsel, he maintained that a petitioner should have the opportunity to raise such claims on appeal. In the circumstances before the Court, he would have remanded the matter for an evidentiary hearing to afford Pitts the opportunity to prove his layered ineffectiveness claim.

In short, commencing with the statements made by the majority in two footnotes in our Court's 4-3 decision in *Pitts*, since 2009, a petitioner was required to raise PCRA counsel's ineffectiveness in response to the PCRA court's Rule 907 notice of intention to dismiss the petition. Critically, while *Pitts* arose in the *Turner/Finley* context, a Rule 907 response has become, at least as a matter of practice, if not precedent, the only opportunity for a petitioner to object to PCRA counsel's effectiveness, as the failure of a petitioner to argue PCRA counsel's ineffectiveness through Rule 907 results in waiver of the issue of PCRA counsel's ineffectiveness.

In subsequent decisions, our Court extended the Rule 907 approach announced in *Pitts* beyond the *Turner/Finley* context, such that any claim of PCRA counsel ineffectiveness must first be raised in the PCRA court, and cannot be raised for the first time on appeal. *Commonwealth v. Colavita*, 993 A.2d 874, 893 n.12 (Pa. 2010) (offering, in a footnote without discussion, that claims of PCRA counsel ineffectiveness may not be

raised for the first time at the direct appeal level, and that claims of PCRA counsel ineffectiveness cannot by raised for the first time on discretionary appeal); *Commonwealth v. Jette*, 23 A.3d 1032, 1044 n.14 (Pa. 2011) (seemingly rejecting notion that claims of PCRA counsel could be raised on appeal for the first time, even where no Rule 907 notice had been issued, but offering that a petitioner could raise such claims if, prior to appeal, he chose to represent himself or obtained private counsel, or, where an exception pursuant to 42 Pa.C.S. § 9545(b)(1)(i)-(iii) could be established, a second petition could be pursued). Not surprisingly, the Superior Court has followed suit, concluding that claims of PCRA counsel ineffectiveness could not be considered for the first time on appeal. *See, e.g., Commonwealth v. Henkel*, 90 A.3d 16 (Pa. Super. 2014); *Commonwealth v. Rykard*, 55 A.3d 1177, 1188 (Pa. Super. 2012); *Commonwealth v. Ford*, 44 A.3d 1190, 1199-1201 (Pa. Super. 2011). However, while the Superior Court has deemed itself bound by our Court's prior decisions in this area, concerns with the current Rule 907 procedures remain. *See, e.g., Henkel*, 90 A.3d at 29 ("We are cognizant that failing to address PCRA counsel ineffectiveness claims raised for the first time on appeal renders any effective enforcement of the rule-based right to effective PCRA counsel difficult at the state level."); *id.* at 36 (Bender, P.J., dissenting, joined by Judge Lazarus and then-Judge, now-Justice Wecht) ("[F]ailing to address Appellant's ineffectiveness claims does not merely make it *difficult* for him to raise them at the state level - it makes it *impossible. . . .* Thus, Appellant will serve the remainder of his life in prison with no state-level opportunity to challenge his PCRA counsel's decision not to raise (or present any evidence to support) the very same claim on which Appellant's codefendant . . . obtained relief and is now serving a sentence of 10 to 20 years. Such inequity demands relief, at least in the form of reviewing Appellant's claims herein." (emphasis original)).

We begin our reconsideration of the current procedure by which a petitioner may vindicate his right to effective PCRA counsel by scrutinizing the Rule 907 procedure. Initially, we consider the terms of Rule 907 itself. Rule 907 generally provides an opportunity for a petitioner, who has not been provided a hearing, and is confronted with imminent dismissal, to set forth reasons why his petition should not be dismissed:

> Except as provided in Rule 909 for death penalty cases,
>
> (1) the judge shall promptly review the petition, any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claim(s). If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal. The defendant may respond to the proposed dismissal within 20 days of the date of the notice. The judge thereafter shall order the petition dismissed, grant leave to file an amended petition, or direct that the proceedings continue.

Pa.R.Crim.P. 907(1).

By its terms, Rule 907 does not mention ineffective assistance of PCRA counsel or claim preservation. Related thereto, Rule 907 does not advise that a failure to respond to the notice and challenge PCRA counsel's effectiveness results in waiver of any such claims. In fact, the notice suggests just the opposite — that the response to such notice is optional. Specifically, Rule 907 provides that "[t]he defendant *may* respond to the proposed dismissal within 20 days of the date of the notice." *Id.* (emphasis added). Thus, according to the plain text of Rule 907, a petitioner's filing of a response to a dismissal notice is discretionary. Consistent therewith, the Rule 907 notice provided in the instant matter stated: "No response to this Notice is required. If, however, you choose to respond, your response is due within twenty calendar days of the above date." PCRA Court's Notice Pursuant to Pennsylvania Rule of Criminal Procedure 907, 12/11/18. As

forcefully offered by then-Justice Baer in *Pitts*, "[a]s there is absolutely no language in the criminal rules or the case law of this Court indicating that a petitioner must file a response to the PCRA court's notice of dismissal or risk waiver of his claims, Appellee cannot be faulted for failing to follow a nonexistent procedure." *Pitts*, 981 A.2d at 891 (Baer, J., dissenting).

Not only does Rule 907, by its terms, not address the preservation of PCRA counsel ineffectiveness claims, the current Rule 907 procedure for raising such claims is functionally unsound. In order to funnel PCRA counsel's ineffectiveness through Rule 907, PCRA counsel's ineffectiveness must be identified in one of four ways: (1) by initial PCRA counsel; (2) by a petitioner while represented by PCRA counsel; (3) by a petitioner without counsel; or (4) by a petitioner with new PCRA counsel. In the first scenario, if the analysis of PCRA counsel's effectiveness is left in the hands of the allegedly ineffective PCRA attorney, counsel must evaluate his own ineffectiveness, threatening his livelihood and professional reputation. *See Christeson v. Roper*, 574 U.S. 373, 378 (2015). Indeed, requiring counsel to do so creates an inherent conflict of interest. For these reasons, our Court has indicated that "counsel cannot argue his or her own ineffectiveness." *Commonwealth v. Spotz*, 18 A.3d 244, 329 n.52 (Pa. 2011). Related thereto, under the second scenario, a petitioner who is already represented by PCRA counsel cannot represent himself, or seek concurrent representation by an additional attorney, as doing so would be precluded by the prohibition on hybrid representation. *See Jette*, 23 A.3d at 1041-42.

Under the third scenario, the responsibility for filing a Rule 907 response is solely on the *pro se* petitioner. Herein, however, the *pro se* petitioner has to perceive PCRA counsel's ineffectiveness, and also understand that proceeding under Rule 907 is the only way to raise the ineffectiveness. These are substantial, if not insurmountable,

burdens to place on a *pro se* petitioner. Furthermore, while Rule 907 requires the PCRA court to provide the reasons for dismissal, often, as is the case here, a court may give only a cursory statement, including merely checking a form box indicating that the claims were "without merit," with nothing more. Such a summary statement would challenge even a seasoned attorney to understand why a petition was being dismissed, let alone a *pro se* petitioner.[15] Additionally, once ineffectiveness claims are identified, they must be raised as layered claims involving each prior counsel, *see Commonwealth v. McGill*, 832 A.2d 1014, 1022-23 (Pa. 2003), a challenging task at times even for accomplished practitioners, *see Commonwealth v. Paddy*, 15 A.3d 431, 479 (Pa. 2011) (Saylor, J., concurring and dissenting) (offering that counsel are ineffective as "in this and many other cases [they] cannot seem to raise layered claims meeting this Court's requirements"). Of course, in addition, these assessments and presentations would have to be completed within Rule 907's short 20-day response period.

Finally, under the fourth scenario, a petitioner seeks to replace PCRA counsel, and hire new counsel to file a response under Rule 907. The practical difficulty with this is that, again, not only would a petitioner need to be aware that PCRA counsel was ineffective and understand he needed to proceed under Rule 907, but the petitioner would also have to secure new PCRA counsel within the 20-day response period limitation; moreover, new counsel would have to review the entire record and file a response within that same period.

On consideration of the issues implicated by these scenarios for raising PCRA counsel's effectiveness under Rule 907, we find each presents almost insurmountable

---

[15] Indeed, this check-the-box approach is impermissible under our decision in *Commonwealth v. Williams*, 782 A.2d 517, 527 (Pa. 2001) (holding that the PCRA court must provide "sufficiently specific reasons for the disposition such that the potential for amendment may be reasonably evaluated by counsel").

difficulties. Thus, we regard the Rule 907 approach to be largely impractical and ineffective.

In fact, given the overwhelming hurdles *Pitts* has introduced for challenging PCRA counsel's effectiveness, we find "there effectively can be no state-level redress for such deficient stewardship." *Paddy*, 15 A.3d at 479 (Saylor, J., concurring and dissenting). Rather, a petitioner, lacking an adequate procedure to challenge PCRA counsel's effectiveness, must seek relief in the federal system through the *de novo* filing of a writ of *habeas corpus. See Trevino v. Thaler*, 569 U.S. 413, 429 (2013); *Martinez v. Ryan*, 566 U.S. 1, 17 (2012). This undermines essential principles of respect and cooperation between the state and federal judiciary, delays the collateral review process, and burdens federal courts to dispose of matters more properly addressed by our Commonwealth's judiciary.

Furthermore, we observe that the Rule 907 procedure summarily pronounced in *Pitts* was unnecessary to our resolution of that appeal, and thus constitutes *obiter dicta*. Specifically, therein, Pitts filed a *pro se* PCRA petition, but, after the appointment of counsel, his attorney filed a *Turner/Finley* no-merit letter alleging that she had reviewed the matter and found no viable issues. The lawyer sought to withdraw from the case, and the PCRA court sent a Rule 907 notice to dismiss. Having received no reply from Pitts, the PCRA court granted the motion to withdraw and ordered the PCRA petition dismissed as meritless. Pitts filed a *pro se* appeal, seeking to assert a claim that PCRA counsel was ineffective for failing to assert trial counsel's ineffectiveness for failing to file a direct appeal challenging his guilty plea and sentence. The Superior Court determined, *sua sponte*, that PCRA counsel failed to explain why Pitts could not obtain relief on a length-of-sentence claim in her *Turner/Finley* no-merit letter and failed to explore other challenges to the discretionary aspects of sentencing. We granted further review to

address the Superior Court's treatment of the no-merit letter, ultimately holding that the Superior Court erred by *sua sponte* considering its validity, as the issue was not raised in the lower court or on appeal. However, the *Pitts* majority went further, finding, in two brief footnotes and in the alternative, that the claim was waived because it was not raised in response to the PCRA court's Rule 907 notice. *Pitts*, 981 A.2d at 879 n.3, 880 n.4. This conclusion, without citation to authority or analysis, formed the basis of the current procedure by which a petitioner must raise PCRA counsel's ineffectiveness, even though our summary proclamation was not necessary to the resolution of the issue we accepted for appeal.

Moreover, although our Court has echoed *Pitts*'s Rule 907 procedure in subsequent cases, and arguably extended its reach, it has never done so as part of a necessary holding in a precedential decision. *See Colavita*, 993 A.2d at 893 n.12 (offering, in a footnote without discussion, as an alternative basis for dismissal, that claims of PCRA counsel ineffectiveness may not be raised for the first time at the direct appeal level); *Commonwealth v. Hill*, 16 A.3d 484, 497 n.17 (Pa. 2011) (citing *Pitts* and *Colavita* as an alternative to holding that petitioner failed to file a timely Rule 1925(b) statement); *Jette*, 23 A.3d at 1044 n.14 (rejecting ability of appellate court to consider an appellant's *pro se* assertions of ineffectiveness while still represented by counsel, and, as an alternative, observed that consideration of motion alleging claims of PCRA counsel ineffectiveness would be contrary to *Pitts* and *Colavita*); *see also Henkel*, 90 A.3d at 33, 36 (Bender, P.J., dissenting) (concluding our Court has not issued a precedential decision addressing preservation of claims of PCRA counsel's ineffectiveness). Thus, the Rule 907 approach to the preservation of PCRA counsel's ineffectiveness claims pronounced in *Pitts* was neither necessary to our decision in that case, nor to any subsequent decision by our Court which echoed that approach. Moreover, even if our Rule 907 discussion

had been necessary in *Pitts* or in a subsequent decision by our Court, as noted above, it lacked any analysis, and, for the reasons discussed above, cannot bear the weight of judicial scrutiny. *See Commonwealth v. Resto*, 179 A.3d 18, 23 (Pa. 2018) (finding doctrine of *stare decisis* does not apply to pronouncements that are not adequately supported in reason); *Commonwealth v. Hvizda*, 116 A.3d 1103, 1105 (Pa. 2015) (determining that incompletely reasoned decisions should not remain controlling authority).

Accordingly, we find that the current Rule 907 procedure for preserving claims of PCRA counsel ineffectiveness in all circumstances was pure dicta, and is deeply flawed. As a result, we now act on then-Justice Baer's plea in *Pitts* that this process is "so obviously unworkable that it should finally be put to rest," and hereby abandon *Pitts*'s Rule 907 approach as the sole procedure for challenging PCRA counsel's effectiveness. *Pitts*, 981 A.2d at 888 (Baer, J., dissenting).

Having repudiated the current Rule 907 procedure as inadequate, we turn to consideration of a more appropriate mechanism for the enforcement of the right to effective assistance of counsel in PCRA proceedings. The parties and *amici* have offered various proposals to effectuate the right to effective PCRA counsel. After careful review, we conclude that the best way to balance the competing concerns reflected in these proposals is to adopt the essence of the approach set forth by the dissenters in *Pitts*: allowing a PCRA petitioner to raise claims of ineffective assistance of counsel at the first opportunity to do so, even when on appeal. Our reasoning follows.

As noted above, via amendments to the PCRA as well as our PCRA jurisprudence, a defendant may seek relief in a direct appeal of his conviction, and then through collateral review, accomplished by the filing of a single counseled PCRA petition. *Grant*, *supra*; *Lark*, *supra*; *Peterkin, supra*. This structure, however, places great importance upon the

competency of initial PCRA counsel. As noted by Justice Saylor in *Williams*, "[t]he nature of this scheme places substantial responsibility upon PCRA counsel to properly identify claims implicating a right to relief and to present them in a form which would invoke merits review. Indeed, particularly in light of the time limitation now imposed under the PCRA, a substantial default by post-conviction counsel may ultimately foreclose merits review of a claim." *Williams*, 782 A.2d at 524. Given the rule-based right to effective assistance of counsel, as well as the crucial nature of post-conviction representation, it is essential that a petitioner possess a meaningful method by which to realize his right to effective PCRA counsel. Petitioner's weighty interest, however, must be balanced with competing and compelling societal interests, including the important interests in the efficient resolution and finality of criminal matters.

We conclude that a modified and flexible *Hubbard* approach to preserving claims of PCRA counsel's ineffectiveness on collateral review is the best way to realize both a petitioner's right to effective PCRA counsel and our citizens' interest in the efficient and final conclusion of criminal matters. Specifically, we find that a review paradigm allowing a petitioner to raise claims of PCRA counsel's ineffectiveness at the first opportunity when represented by new counsel, even if on appeal, while not an ideal solution, accommodates these vital interests. Fully cognizant of the difficulties discussed above associated with requiring PCRA counsel himself, or a *pro se* petitioner, to raise claims of PCRA counsel's ineffectiveness, we hold that a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal.[16]

---

[16] *Amici* Defender Association of Philadelphia and Pennsylvania Association of Criminal Defense Lawyers offer that, in a *Turner/Finley* no-merit situation, the PCRA court should have discretion to appoint new counsel when appropriate, which, according to *amici*, PCRA courts do not currently possess, citing *Commonwealth v. Williams*, 204 A.3d 489, 492-93 (Pa. Super. 2019), and *Commonwealth v. Maple*, 559 A.2d 953, 955 (Pa. Super.

Initially, this approach – allowing claims of ineffective assistance of PCRA counsel to be raised on appeal – has the benefit of retaining in most instances our 20-year-old decision in *Grant* and its salutary feature of channeling trial counsel ineffectiveness claims to collateral review under the PCRA. While our approach breaks with *Grant* and its progeny to some degree, as it now allows claims of PCRA ineffectiveness to be raised on appeal – which was the prevailing law at the time of *Hubbard* and throughout the passage of the PCRA in 1988 and its amendments in 1995 – no case had deemed an allegation of PCRA counsel's ineffectiveness, raised on appeal, to be a prohibited second or subsequent PCRA petition, nor was the PCRA's time bar, instituted in 1995, viewed as precluding such review. Indeed, prior to our decision in *Grant*, a PCRA petitioner not only could, but was required to, assert claims of PCRA counsel ineffectiveness for the first time on appeal if represented by new counsel. *See, e.g., Pursell*, 724 A.2d at 302.

In some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims. *Holme*s, 79 A.3d at 577. However, in other cases, the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter. Consistent with our prior case law, to advance a request for remand, a petition would be required to provide more than mere "boilerplate assertions of PCRA counsel's ineffectiveness," *Hall*, 872 A.2d at 1182; however, where there are "material facts at issue concerning [claims challenging counsel's stewardship] and relief is not

1989). As this appeal does not involve the distinct *Turner/Finley* scenario, we save resolution of this question, including the continued viability of the *Pitts* Rule 907 approach in this unique context, for another day.

plainly unavailable as a matter of law, the remand should be afforded," *Grant*, 813 A.2d at 740 n.2 (Saylor, J., concurring).[17]

Our procedure avoids some of the difficulties expressed by former Chief Justice Castille in *Ligon*s and *Pitts*. Specifically, an appellate court will not be tasked with developing the record or acting as a court of original jurisdiction. Rather, appellate courts will have the ability to grant or deny relief on straightforward claims, as well as the power to remand to the PCRA court for the development of the record. Again, as aptly noted by Justice Saylor in *Grant*, "[w]hen properly implemented, the remand procedure ameliorates most of the difficulties that the majority associates with the *Hubbard* rule: the tension between the rule against raising matters for the first time on direct appeal and the

---

[17] Additionally, our approach brings our jurisprudence in this area in alignment with our recent decision in *Commonwealth v. Shaw*, 247 A.3d 1008 (Pa. 2021), in which we sanctioned the review on appeal of *appellate* PCRA counsel's performance. In *Shaw*, the PCRA court, after holding a hearing, denied relief on the post-conviction petition, and Shaw appealed. PCRA counsel filed a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925. The statement, however, omitted the claim that had been the only reason for the post-conviction hearing, an alibi-related challenge to the stewardship of trial counsel. After a substitution of counsel, the alibi claim was advanced on appeal to the Superior Court in a layered ineffectiveness claim consisting of allegations of trial counsel ineffectiveness, as well as PCRA counsel's ineffectiveness for failing to preserve the alibi ineffectiveness claim. The Superior Court, for its part, found merit to the claim and reversed, vacated the judgment of sentence, and remanded for a new trial. The Commonwealth challenged Shaw's claim, asserting that claims of PCRA counsel cannot be raised for the first time on appeal. Then-Chief Justice Saylor, writing for the Court, acknowledged that permitting a claim of ineffective assistance of appellate post-conviction counsel (for failing to raise a claim that was pursued before the PCRA court) on appeal was inconsistent with "the direction previously taken by a majority of the Court"; nevertheless, we allowed the claim of ineffectiveness of appellate post-conviction counsel to be raised on appeal. *Shaw*, 247 A.3d at 1017. We found the circumstances before it to be factually distinguishable from the line of decisions pertaining to initial PCRA counsel, and, thus, not subject to considerations of *stare decisis*. In embracing the consideration of this type of collateral appellate claim, our Court noted that it was particularly appropriate that such claims be addressed in state court, as, while federal doctrine "may compensate for the Court's decisions in this line," federal review does not extend to counsel errors in appeals from initial-review collateral proceedings. While the context for the instant case is somewhat distinct, we nevertheless find that the approach we adopt today is fully consonant with *Shaw*.

requirement that claims of ineffective assistance must be raised at the first available opportunity is lessened, since the matter can be returned to the common pleas court for disposition in the first instance; the specter of the appellate court engaging in factfinding is removed; and the remand will generally put the matter back before the trial judge, who, as the [*Grant*] majority observes, is in the best position to review the ineffectiveness claims in the first instance." *Grant*, 813 A.2d at 739–40 (Saylor, J., concurring).

Furthermore, respectfully, but contrary to former Chief Justice Castille's protestations, an approach favoring the consideration of ineffectiveness claims of PCRA counsel on appeal (if the first opportunity to do so) does not sanction extra-statutory serial petitions. Initially, we note that the PCRA does not define or speak to serial PCRA petitions, other than to state that "[a]ny petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless [one of the three enumerated exceptions applies]." 42 Pa.C.S. § 9545(b)(1). Moreover, we note that, when the legislature amended the PCRA to include the "second or subsequent petition" language, defendants could raise claims of PCRA counsel's ineffectiveness for the first time on appeal. *See Commonwealth v. Albert,* 561 A.2d 736 (Pa. 1989). Additionally, as thoroughly explained by Judge Bowes in *Rykard, supra*, in considering whether a response to a Rule 907 notice of dismissal constituted a serial petition, it appears that the phrase "second or subsequent petition," 42 Pa.C.S. § 9545(b)(1), derives from our decision in *Commonwealth v. Lawson,* 549 A.2d 107, 112 (Pa. 1988). *See Rykard*, 55 A.3d at 1188. The concern in *Lawson*, however, was the "the vexing problem of repetitive petitions" under the PCHA. *Lawson*, 549 A.2d at 108. Indeed, the petitioner in *Lawson* was on his fourth collateral *proceeding*. Thus, the driving force behind the *Lawson* decision, and the subsequent amendment to the PCRA, was multiple post-conviction petitions.

Critically, through our 2002 decision in *Grant* and its progeny, we have narrowed the stages at which a defendant may obtain relief on ineffectiveness grounds, and, thus, funneled such claims into a "single, counseled petition." *Williams*, 782 A.2d at 524. Specifically, while *Grant* had the salutary effect of channeling, in most instances, ineffective assistance of counsel claims to collateral review, it also eliminated the ability to raise such claims on direct appeal, and, thus, ended at least one opportunity for a defendant to raise ineffectiveness claims. As a result, by our decision in *Grant* and its progeny, we reduced the number of stages at which a defendant could obtain relief, to one. This, in turn, as noted above, greatly increased the responsibility and importance of the role of PCRA counsel. Indeed, a failure by PCRA counsel to identify and properly litigate meritorious claims could be fatal to relief. This singular collateral review construct stands in stark contrast to the specter of multiple post-conviction proceedings that was our concern in *Lawson*.

For these reasons, and to avoid the possibility that, by operation of *Grant* and its progeny, we have diminished the ability of certain defendants to ensure that they have effective counsel, we deem the consideration on collateral appeal of claims of PCRA counsel ineffectiveness to spring from the original petition itself, and that doing so does not amount to impermissibly allowing a "second or subsequent" serial petition – the concern of our Court in *Lawson* and the General Assembly in its 1988 amendments to the PCRA. *Lawson,* 549 A.2d at 108; 42 Pa.C.S. § 9545(b)(1). Accordingly, we reject the notion that considering ineffectiveness claims on collateral appeal constitutes a prohibited serial petition, violating the PCRA's one-year time bar.[18]

---

[18] We decline to adopt the approach, suggested by Appellee and *Amicus* Pennsylvania Innocence Project, that would deem a petitioner's "discovery" of initial PCRA counsel's ineffective assistance to constitute a "new fact" that was unknown to petitioner, allowing such petitioner to overcome, in a successive petition, the PCRA's time bar provision under the "new fact" exception. *See* 42 Pa.C.S. § 9545(b)(1)(ii). We have repeatedly rejected

In addition, we are ultimately unmoved by Chief Justice Castille's concern about arbitrariness. While Chief Justice Castille concluded allowing claims of ineffective assistance of counsel to be raised for the first time on appeal would result in arbitrariness, as it would apply only to those petitioners who obtained new counsel at that juncture, we observe that it is no more arbitrary than the Rule 907 procedure sanctioned in *Pitts*, which requires new counsel or a *pro se* petitioner to navigate the Rule 907 minefield described above. Moreover, in light of the presumption that counsel has rendered effective assistance, the default assumption is that present counsel will have advised their clients of the option of seeking substitute counsel.

Finally, we acknowledge that it could be argued that our approach infringes upon traditional notions of issue preservation, as asserted by Chief Justice Castille in *Ligons* and *Pitts*. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). However, as persuasively explained by then-Justice Baer in *Ligons*, a petitioner could never satisfy Pa.R.A.P. 302(a) when challenging PCRA counsel's performance "because the first opportunity to raise such claim is in his appeal from the PCRA court's denial of relief. A petitioner cannot challenge PCRA counsel's effectiveness before the PCRA court because the alleged ineffectiveness is playing out as that proceeding occurs, and ineffectiveness cannot be identified until the proceeding has concluded." *Ligons*, 971 A.2d at 1139. Related thereto, and in line with our expressions in *Shaw*, the Rule 302 waiver doctrine should not apply

---

such an understanding of the "new fact" exception to the PCRA's one-year time bar. *See Commonwealth v. Gamboa-Taylor*, 753 A.2d 780, 785 (Pa. 2000) ("[S]ubsequent counsel's review of previous counsel's representation and a conclusion that previous counsel was ineffective is not a newly discovered 'fact' entitling Appellant to the benefit of the exception for after-discovered evidence."); *Pursell*, 749 A.2d at 916-17 (finding claim of ineffective assistance of counsel layered upon a claim of trial counsel ineffectiveness was based upon facts that existed at time of trial, and did not fall within the "new facts" exception to the time bar).

in these circumstances, as the issue preservation concerns underlying the doctrine simply cannot be applied where claims of ineffective assistance of PCRA counsel arise upon the acquisition of new counsel, as it would be unreasonable to penalize a PCRA petitioner "because his attorney didn't recognize and raise a claim of his own ineffectiveness contemporaneously with the lawyer's own misstep." *Shaw*, 247 A.3d at 1015 (noting general rule against counsel from challenging their own performance). Accordingly, and consistent with *Shaw*, we conclude Rule 302(a) does not pertain to these scenarios.

Despite our holding today, we would be remiss if we did not recognize that certain aspects of the approach offered by *amici* Office of the Attorney General and the Pennsylvania District Attorneys Association are attractive. First, *amici* maintain that a formal rules-making process under our rules committees is the preferable route. In lieu of that, they offer the following approach: Before the final disposition of a PCRA petition, the petitioner should be provided the opportunity to allege ineffective assistance of post-conviction counsel. This would begin with the PCRA court providing notice to the petitioner of the potential for such a claim. If the petitioner acted upon this notice, his current lawyer would be granted leave to withdraw, and a new lawyer appointed, allowing for the filing of a "motion" setting forth allegations of, *inter alia*, ineffectiveness of PCRA counsel. Brief of *Amicus* Office of Attorney General at 4-5. Such an approach would not only replace the problematic Rule 907 procedure, but would allow such claims to be litigated at the earliest possible point, before the PCRA court rather than on appeal, obviating the need for an appellate court to review it in the first instance.

However, as for deferring to our rules committees, we note that our committees have struggled for some time with the dilemma of how to enforce the right to effective PCRA counsel, and we conclude we ought not to countenance any further delay. Furthermore, while *amici*'s alternative procedure contains appealing attributes, it would

nevertheless create, in essence, a two-step framework of the presentation and resolution of claims in the PCRA court. This would not only place a significant burden on our already taxed PCRA courts, but it would eliminate the potential of the immediate resolution of certain claims by an appellate court. Additionally, we believe that appellate review, with the potential for a remand, is not too onerous in terms of efficiency or delayed finality.

In conclusion, as thoughtfully expressed by then-Justice Baer in *Ligons*, "[t]he approach to examining claims of PCRA counsel ineffectiveness taken herein may not be ideal, but it is essential to preserve an enforceable right to effective PCRA counsel. Otherwise, we would be perpetrating little more than a myth that the right to effective PCRA counsel exists, when, in reality, such right would be illusory." *Ligons*, 971 A.2d at 1141 (Baer, J., concurring). We reject the current Rule 907 procedure by which a petitioner may raise claims of ineffective assistance of PCRA counsel as unworkable, and offer a modified and flexible *Hubbard* approach allowing a petitioner to raise claims of ineffective PCRA counsel at the first opportunity, even if on appeal. We conclude this approach best recognizes a petitioner's right to effective PCRA counsel while advancing equally legitimate concerns that criminal matters be efficiently and timely concluded.

The order of the Superior Court is reversed, and the matter is remanded to that court for proceedings consistent with our decision today.

Chief Justice Baer and Justices Saylor, Donohue, Dougherty and Wecht join the opinion.

Justice Dougherty files a concurring opinion.

Justice Wecht files a concurring opinion.

Justice Mundy files a dissenting opinion.